469 So.2d 1247 (1985)
Richard GALLION
v.
STATE of Mississippi.
No. 54668
Supreme Court of Mississippi.
May 22, 1985.
*1248 Jerry L. Mills, Pyle, Harris, Dreher & Mills, Jackson, for appellant.
Bill Allain, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Edwin Lloyd Pittman, Atty. Gen. by Suzanne Merritt, Sp. Asst. Atty. Gen., Jackson, for appellee.
BEFORE PATTERSON, C.J., and HAWKINS and PRATHER, JJ.
PRATHER, Justice, for the Court:
Appellant Richard Gallion was convicted of armed robbery in the Circuit Court of Hinds County, and sentenced to life in the custody of the Mississippi State Department of Corrections.
Gallion appeals assigning as error:
(1) Appellant was denied a fair trial by the introduction of details surrounding prior convictions and evidence of other crimes; and
(2) Appellant was denied effective assistance of counsel.
On October 19, 1981, the Poindexter Branch of the First National Bank, located on the corner of Rose and Capitol in Jackson, Mississippi, was robbed by two males. The men entered the bank around 10:00 a.m. and proceeded to the window of head teller Ethel Fisher. One of the men, wearing a sheer blue ladies scarf over his face, stepped up to the window and asked for money. The other man, who was wearing a straw hat, pointed a pistol at Fisher while the first man stuffed the money in a bag. Fisher identified appellant Gallion as one of the men that robbed the bank.
After robbing Fisher, the men proceeded to the window of teller Tamala Thompson. Thompson handed over approximately $4,000 in cash to the man wearing the blue scarf while the man wearing the straw hat pointed a pistol at her. After robbing Thompson, the two men exited the bank.
Brenda Burse, bank teller, Inez Little, bank secretary, and A.D. Montgomery, a bank customer at the time of the robbery, each identified the appellant as the man who held the gun during the robbery.
Detective J.W. Monroe of the Jackson Police Department discovered a sheer blue scarf in some bushes approximately 50 yards from the bank. Monroe found a straw hat stashed between two gas meters in a nearby neighborhood. At trial, bank tellers Fisher, Thompson and Burse recognized the scarf and the hat as those worn by the men who robbed the bank.
Detective C.M. Crisco recovered a portion of a sheer blue scarf and other items *1249 of clothing while searching the basement of an abandoned house located next door to the residence of appellant's sister, Hilda Gallion. At trial, Fisher, Thompson and Burse recognized the clothing as resembling that worn by the men who robbed the bank.
Appellant Richard Gallion, 22 years old, denied robbing the bank. Gallion testified that on the morning of October 19, 1981, he walked from his residence on Whitfield Mill Road to his sister's house on Hunt Street, arriving around 8:30 a.m. Gallion testified that between 9:30 and 10:00, he and his sister drove to the Unifirst Bank on Capitol Street. Gallion stated that he remained in the car with his sister's children while his sister went inside to make a withdrawal. Appellant's sister, Hilda Gallion, corroborated the appellant's alibi. James Anding, assistant vice-president of Unifirst Savings & Loan, confirmed a withdrawal from Hilda Gallion's account at 9:51 a.m. on October 19, 1981.

I.
Whether appellant was denied a fair trial by the introduction of details surrounding prior conviction and evidence of other crimes not resulting in convictions?
At trial, appellant took the stand and testified that he was with his sister at the time of the bank robbery. On cross-examination, Gallion admitted prior convictions for disorderly conduct, resisting arrest, possession of marijuana and gambling. The prosecuting attorney then examined the appellant at length concerning his illegal activities.[1] Counsel for the appellant made no objection to this line of questioning.
On appeal, appellant argues that the admission of this evidence deprived him of a fair trial guaranteed by the Due Process Clause of the Mississippi Constitution, Article 3, Section 14. The state, on the other hand, contends that inasmuch as no objection was made by the defense to the introduction of this testimony at trial, the point is "procedurally barred" and may not be raised on appeal.
Miss. Code Ann. § 13-1-11 (1972) permits the introduction of a prior conviction for the purpose of impeaching the credibility of any witness. It is, however, the well-settled rule in this state that a defendant may not be examined about the details of prior convictions. Murray v. State, 266 So.2d 139 (Miss. 1972); Mangrum v. State, 232 So.2d 703 (Miss. 1970); White v. State, 202 Miss. 246, 30 So.2d 894 (1947); Roney v. State, 142 So. 475 (1932). Likewise, evidence of specific conduct by an accused which has not resulted in a conviction is not admissible for purposes of impeachment. Allison v. State, 274 So.2d 678 (1973); 48 Miss.L.J. 1059, 1078 (1977). It is unclear whether the testimony elicited by the prosecutor in the case sub judice concerned the details of appellant's prior convictions or details of other activities on the part of appellant which had not resulted in convictions. In either case, the evidence was clearly inadmissible.
As noted, no objection to the introduction of this inadmissible evidence was raised at trial. The state argues that this Court should therefore apply the rule prohibiting consideration of an error raised for the first time on appeal. Copeland v. State, 423 So.2d 1333 (Miss. 1982). The state points out that this Court in Hutchinson v. State, 391 So.2d 637 (Miss. 1981) refused to consider an assignment of error based upon the admission of testimony regarding another criminal act by the accused where no objection was made to the testimony at trial. 391 So.2d at 638-639.
However, an exception to the rule that questions not raised in the trial court cannot be raised for the first time on appeal exists where the errors at trial affect fundamental rights. Brooks v. State, 209 Miss. 156, 46 So.2d 97 (1950). In Brooks, the defendant was charged with assault *1250 and battery with intent to kill. On cross-examination, the prosecution asked, "This place of business you run is a bootlegging establishment, isn't it?" Defense counsel failed to object to the question. Reviewing the conviction, this Court noted that the questioning "was highly improper and prejudicial as showing guilt of another crime." This Court reversed the conviction on the grounds that the improper questioning combined with other violations of constitutional and fundamental rights amounted to a deprivation of due process as guaranteed by Miss. Const. § 14, Art. 3.
In the related context of prosecutorial misconduct, this Court recently stated that "where appellant cites numerous instances of improper and prejudicial conduct by the prosecutor, this Court has not been constrained from considering the merits of the alleged prejudice by the fact that objections were made and sustained, or that no objections were made." Smith v. State, 457 So.2d 327, 333-334 (Miss. 1984).
In the case sub judice, the lengthy and repetitious development of Gallion's involvement with gambling and marijuana clearly violated the rule that testimony in a criminal trial should be confined to the charge for which the accused is on trial. Tucker v. State, 403 So.2d 1274 (Miss. 1981).
There is no merit to the state's contention that this error was harmless. Evidence which is incompetent and inflammatory in character carries with it a presumption of prejudice. Tutor v. State, 299 So.2d 682 (Miss. 1974). Appellant was tried and sentenced by the jury under Miss. Code Ann. § 97-3-79 (Supp. 1984). This statute is distinctive, for in an armed robbery case the jury is not only the factfinder of guilt or innocence, but it also has the power to return a sentence of life imprisonment upon a verdict of guilty. Parker v. State, 367 So.2d 456 (Miss. 1979). In light of the fact that the imposition of a life sentence for armed robbery is within the sole province of the jury, it cannot be said that the introduction of this inflammatory testimony regarding other criminal conduct of the appellant had no harmful effect. As a result, the defendant was not afforded the fundamental right to a fair trial in this case.
Appellant's first assignment has merit. Because reversal is required on this ground, appellants second assignment of error regarding the alleged ineffective assistance of counsel is moot. Read v. State, 430 So.2d 832, 841 (Miss. 1983).
Appellant's conviction and sentence is reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., and HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.
WALKER and ROY NOBLE LEE, P. JJ., dissent.
ANDERSON, J., not participating.

APPENDIX
Q. And you were selling weed?
A. No, I ain't saying I was selling weed. I said I selling it when I needed to pay bills or something like that, you know.
Q. Well, why did you need to sell weed making $200.00 a week?
A. Why I needed to sell it?
Q. Uh huh.
A. Because $200.00 a week  the house I was living in was § 260.00 a month  and like gas bills and all run together would be about $500.00.
Q. How Much?
A. $500.00.
Q. $500.00?
A. Right.
Q. A month?
A. Right.
Q. But you were making $800.00 a month. Isn't that right?
A. Well, I said sometimes I don't get paid. When you got a bad week, you don't get paid and I would get $75.00 or $50.00.
*1251 Q. How much were you making selling weed?
A. I wasn't making nothing selling weed. I would take and get $120.00 worth of dime bags.
Q. What's a dime bag?
A. A dime bag of marijuana.
Q. But what is a dime bag?
A. $10.00.
Q. Pardon?
A. $10.00.
Q. $10.00 a bag?
A. Yeah.
Q. Is that about an ounce of marijuana?
A. It's about an ounce in all?
Q. Uh huh.
A. It's less than an ounce.
Q. Less than an ounce of marijuana?
A. Right.
Q. And that's a $10.00 bag?
A. Right.
Q. What's a twenty-five cent bag?
A. I don't know.
Q. Pardon?
A. I don't know.
Q. You don't know that?
A. No.
Q. And you had about $160.00 when you got caught. Right?
A. Right.
Q. And you got that from where?
A. I sold a little weed and was doing a little gambling.
Q. Sold some weed and did some gambling. Is that what you said?
A. Right.
... .
Q. You told the jury a few moments ago that you made $50.00 gambling. Is that right?
A. No.
Q. You sold weed for $50.00.
A. I sold $50.00 worth of weed and took that and turned it into $165.00.
... .
Q. But I thought you told the jury a few minutes ago that you won the money from one guy playing Coon Kang. Isn't that right?
A. Did I tell the jury that?
Q. Uh huh.
A. I said I sold $50.00 worth of weed and turned it into $164.00 or $165.00.
... .
Q. Who did you sell it to?
A. Any of the people that came that wanted to buy it, you know.
Q. Anybody that wanted to buy it.
A. Right.
Q. How long did it take you to sell the five dime bags?
A. Twenty minutes  thirty minutes  something like that.
Q. So, you sold all of it in that amount of time. Right?
A. Right.
Q. So, you made what  $10.00  in that amount of time?
A. Uh huh.
... .
Q. So then you went gambling.
A. Right.
Q. And you gambled either with Poor Papa or some other guy.
A. (Pause).
Q. Is that right?
A. Well, like I say, when you gamble, if you break one person, another one will be sitting on the side waiting on you.
Q. And, so, then you gamble him.
A. Right.
Q. And that's how you made the rest of your money. Right?
A. That's how I make a living.
Q. That's how you make a living?
A. Right.
*1252 ... .
Q. But I thought you only sold marijuana when you needed some extra money.
A. When I needed some?
Q. Right.
A. Well, see, the first and the last of the month don't come but once out of the month.
Q. But I thought you told the jury that you only sold marijuana when you needed some extra money to pay bills with.
A. That's right.
Q. You just now told them that you gambled and sold marijuana to pay bills.
A. I said I gambled for a living.
Q. Oh, you gamble for a living.
A. Right.
Q. So, you don't work at the Doll House. Gambling is your game.
A. I works.
Q. You work.
A. I don't gamble every day.
Q. What do you do?
A. Sir?
Q. What kind of work do you do?
A. Well, if you come and ask me to play a game of Coon Kang with you for $5.00 or $10.00 each, I'll sit there with you.
... .
WALKER, Presiding Justice, dissenting:
I respectfully dissent from the holding of the majority in reversing this case and remanding it for a new trial. The evidence demonstrated that the defendant was guilty without any question beyond a reasonable doubt.
The error assigned was not preserved at the trial level as no objections were interposed to the questions propounded by the district attorney with reference to the details of crimes admittedly committed by the defendant. A defendant's right to object to this line of questioning is so elementary that any fledging trial attorney would be aware of it. Therefore, the only conclusion to be drawn is that the failure to make an issue of the questions was a trial tactic of defense counsel.
The error is now procedurally barred and that rule should be invoked in accordance with a line of cases too numerous to mention. I would affirm the judgment and sentence of the lower court.
ROY NOBLE LEE, P.J., joins this dissent.
NOTES
[1] Appendix A sets forth a representative portion of the testimony complained of by the appellant to show the nature of the cross-examination. The entire colloquy is not included because of its length.