UNITED STATES of America,
Plaintiff–Appellee,

v.

James GRIMES, Defendant–Appellant.

No. 95–1034.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1995.

Decided May 8, 1995.

Nancy R. Graven, Federal Public Defender, Springfield, MO, argued for appellant.

Lawrence E. Miller, Asst. U.S. Atty., Jefferson City, MO, argued for appellee.

Before RICHARD S. ARNOLD, Chief Judge, MURPHY, Circuit Judge, and Davis,* District Judge.

DIANA E. MURPHY, Circuit Judge.

James Grimes appeals from the revocation of his supervised release. The district court[1] ordered him to serve 12 months after a revocation hearing at which it found that he had violated five conditions of his release. Grimes asserts on appeal that his violations should have been classified as grade C and that certain evidence should not have been admitted. We affirm.

Grimes was originally sentenced to 27 months for distribution of cocaine in violation of 18 U.S.C. § 841. After entering on supervised release he relocated to the Western District of Missouri, where the probation office later filed a notice alleging that he had violated five release conditions.

The notice of violation alleged Grimes had been arrested and convicted of shoplifting in July 1992, and again in September 1994, in violation of the condition that he not commit

---

\* The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota, sitting by designation.

1. Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

any crimes; [2] had failed to inform the probation officer of the arrests or convictions in violation of conditions three and twelve requiring regular reports and notice of any arrests or questioning by law enforcement; had stated in July 1992 and September 1994 supervision reports that he had had no contact with law enforcement officers and had not been arrested or named as a defendant in any criminal case; had left the judicial district without permission in violation of condition two; had received speeding tickets in two different counties in January and April 1994, but failed to include them in his reports for those months in which he falsely certified that he had had no contact with law enforcement officials and had not committed any crimes; and had tested positive for cocaine in November 1994 in violation of the condition prohibiting use of controlled substances. [3]

Upon entering supervised release Grimes had signed a form acknowledging that he understood the release conditions and that violation of any could result in revocation of his release. He filled out and submitted to the probation office monthly supervision reports pursuant to release condition three. Each report required him to state whether he had been questioned by law enforcement officials, been arrested or named as a defendant in a criminal case, possessed or used controlled substances, or travelled outside the judicial district without permission in the past month. Each report stated in bold print:

> WARNING: ANY FALSE STATEMENTS MAY RESULT IN REVOCATION OF PROBATION, SUPERVISED RELEASE, OR PAROLE, IN ADDITION TO 5 YEARS IMPRISONMENT, A $250,000 FINE OR BOTH.

**2.** The probation office learned of these convictions when police notified it on November 18, 1994 that Grimes had been arrested that day for shoplifting and assault, and that he had two prior shoplifting convictions. Charges stemming from the November 1994 incident were still pending at the time supervised release was revoked.

**3.** The probation office mistakenly alleged that the positive test result showed a violation of condition seven, but that condition required notice in seventy-two hours of any change in residence or

(18 U.S.C. § 1001.)

The form stated that by signing his name adjacent to this warning Grimes certified the accuracy and completeness of the information furnished.

At the final revocation hearing Grimes admitted to most of the alleged violations, but denied using cocaine. The government offered into evidence a laboratory report from PharmChem Laboratories indicating that the urine sample he had provided tested positive for cocaine. It also offered a chain of custody form, on which Grimes had certified that the specimen he provided had been sealed in his presence and had been assigned a particular specimen number. The laboratory report contained a certification from the technician who tested the specimen that its identification number matched that referenced by Grimes, that it had arrived at the laboratory properly sealed, and that the specimen had been examined, handled, and analyzed in accordance with applicable requirements. [4] The government also offered an April 1, 1993 affidavit from David Fretthold, the PharmChem director of toxicology. The affidavit described standard testing methodologies and quality control procedures used by PharmChem. It also referenced three samples which had been received and analyzed in 1993, stating that positive results of tests performed on those samples indicated cocaine use. The samples referred to in the affidavit were not taken from Grimes.

Grimes objected to the admission of the laboratory report as unreliable and incomplete and to the Fretthold affidavit as irrelevant because it did not explain the testing procedures used here. The government responded that the affidavit described PharmChem's current testing procedures and that it, along with the other evidence presented,

employment. The parties agree that the relevant condition was condition eight which prohibited use of controlled substances.

**4.** The government also offered without objection a page from the probation office specimen collection and documentation procedures handbook. This page stated that a specimen should not be tested if its identification label were missing or did not match that listed on the specimen's chain of custody form, or if its seal were broken.

demonstrated that the positive test result was reliable. The district court admitted the disputed evidence, and found that the sample provided by Grimes tested positive for cocaine and that Grimes had violated the condition of supervised release prohibiting the use of controlled substances.[5]

At the close of evidence counsel for Grimes argued that false reporting violations should be classified grade C under U.S.S.G. § 7B1.1, and that it would be "contrary to the spirit of the guidelines" to classify them as more significant grade B violations. Tr. of revocation hearing at 15. Counsel also pointed out that grade C violations did not require revocation, U.S.S.G. § 7B1.3(a), but if release were revoked, the sentencing range would be 5 to 11 months.

There are three different grades of supervised release violations under the Sentencing Guidelines. U.S.S.G. § 7B1.1. A grade A violation arises from conduct which constitutes an offense punishable by a term of imprisonment exceeding one year that is a crime of violence or a controlled substance offense or involves a firearm or destructive device, or any other offense punishable by a term of imprisonment exceeding twenty years. A grade B violation consists of "conduct constituting any other federal state or local offense punishable by a term of imprisonment exceeding one year." A grade C violation is conduct constituting an offense punishable by one year imprisonment or less, or a violation of any other condition of supervision. The district court ruled that by filing false reports Grimes had committed grade B violations and sentenced him to 12 months incarceration.[6]

Grimes asserts that the district court committed two errors: in concluding that false statements made in monthly reports constitute grade B violations rather than grade C and in finding that he had used cocaine. He argues the finding was based in substantial part on irrelevant evidence since the Fretthold affidavit did not explain the testing procedures used for his particular sample and could therefore not provide proper foundation for the admission of his test result.

■ The district court apparently based its conclusion that the false statements to the probation officer were grade B violations on a violation of 18 U.S.C. § 1001. A warning related to that statute was prominently displayed on each report form Grimes had to fill out and submit.[7]

Section 1001 can apply to statements within the jurisdiction of the federal judiciary. *United States v. Bramblett,* 348 U.S. 503, 509–10, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955). The courts of appeal have generally agreed that § 1001 applies to statements made to the judicial branch when they relate to the administrative or "housekeeping" function, but not when they relate to the adjudicative function. *See, e.g., United States v. Inserra,* 34 F.3d 83, 87–88 (2nd Cir.1994); *United States v. Deffenbaugh Indus., Inc.,* 957 F.2d 749 (10th Cir.1992); *United States v. Holmes,* 840 F.2d 246, 248 (4th Cir.), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Mayer,* 775 F.2d 1387, 1388–92 (9th Cir.1985); *United States v. Abrahams,* 604 F.2d 386, 393 (5th Cir.1979); *Morgan v. United States,* 309 F.2d 234 (D.C.Cir.1962), *cert. denied,* 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963); *but see United States v. Hubbard,* 16 F.3d 694, 701 (6th Cir.1994) (refusing to limit application of § 1001 to the administrative function).

---

5. Confusion arose as a result of the mistake in the notice of violation reference to condition seven instead of eight, and the court identified the positive urinalysis as the basis for finding violation of condition seven. There is no issue presented on appeal related to this mistake.

6. The sentencing range for a defendant with Grimes' criminal history score of three who commits a grade B violation is 8 to 14 months. U.S.S.G. § 7B1.4.

7. See *supra* p. 490. Section 1001 provides: Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes fraudulent statements or representations, or makes or uses any false writing or document, knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Several courts have applied § 1001 to statements made to a probation officer. In *United States v. Inserra*, 34 F.3d 83, 87–88 (2nd Cir.1994), the Second Circuit affirmed a conviction under § 1001 for filing false reports with the probation office. That court explicitly considered the difference between administrative and adjudicative functions in terms of application of the statute. It concluded that "the duties of a probation officer in supervising a probationer clearly are administrative in nature ... and have no bearing on the court's judicial function." *Id.* at 88. The Ninth Circuit has also affirmed a conviction under § 1001 for a false statement to a probation officer. *United States v. Gonzalez–Mares*, 752 F.2d 1485 (9th Cir.), *cert. denied*, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985) (defendant falsely reported no prior criminal history and no use of an alias). A different result followed where statements were made to the court to influence a judicial decision. *United States v. Mayer*, 775 F.2d 1387 (9th Cir.1985) (false letters submitted to district court in hope of influencing sentence).

Grimes argues that a false statement to a probation officer only comes under § 1001 when made in furtherance of illegal activity or an illegal scheme, citing *United States v. Walker*, 896 F.2d 295 (8th Cir.1990). In that case a defendant had pled guilty to violating § 1001 by filing a false financial affidavit with his probation officer; the false affidavit had been part of a scheme to conceal assets from the Internal Revenue Service. In *Walker* no issue was presented or decided about § 1001, however, and that case does not stand for the proposition Grimes asserts.

We find the reasoning employed by the Second Circuit in *Inserra* convincing, and conclude § 1001 may be applied to false statements in a monthly supervision report because such statements do not relate to the court's adjudicative function. Statements in supervision reports are used to track compliance with release conditions and to ensure regular contact with the probation office. The function of the report is predominately supervisory and administrative, rather than adjudicative. Although the probation office may consider the answers given on the report in determining whether to seek modification or revocation of supervised release, the ultimate decision to modify or revoke supervised release is made by the court, not the probation office.

Because the false statements Grimes admittedly made fit within the conduct covered by § 1001, and that statute provides a term of imprisonment of up to five years, the district court did not err in concluding that the false statements constituted grade B violations under the Guidelines. U.S.S.G. § 7B1.1.

Grimes also asserts that classifying the false statements as grade B violations is "contrary to the spirit of the guidelines" and that he was not on notice that such statements could violate § 1001. Each report filed by Grimes referred to 18 U.S.C. § 1001 and warned that false statements could result in imprisonment for up to five years, a large fine, and revocation of supervised release. This was sufficient warning. Even if the false statements were classified as grade C violations, the action of the district court could be justified under Chapter 7 of the Sentencing Guidelines. That chapter consists of a series of policy statements relating to violations and revocation of probation and supervised release which are not binding on the sentencing court. *United States v. Hensley*, 36 F.3d 39, 42 (8th Cir.1994); *United States v. Levi*, 2 F.3d 842, 845 (8th Cir.1993); *see also* U.S.S.G. Chapter 7, Part 1 (Sentencing Commission has chosen to adopt policy statements only in this area; revocation guidelines to be issued after evaluation and comment on the policy statements). The governing law in this area is statutory. 18 U.S.C. § 3583(e)(3); *Hensley*, 36 F.3d at 42; *Levi*, 2 F.3d at 845.

A sentence imposed within the limits of § 3583(e) will not be disturbed "absent an abuse of discretion." *United States v. Graves*, 914 F.2d 159, 161 (8th Cir.1990). The maximum sentence which the district court could have imposed here is two years, because the offense for which Grimes was convicted was a class C felony. 18 U.S.C. §§ 3583(e)(3) & 3559(a). Given the number of violations committed by Grimes and their nature, we cannot say that the district court

abused its discretion by imposing a sentence of 12 months.

■ Grimes also contends that the district court erred in finding that he had violated the condition prohibiting use of controlled substances. He objects that the Fretthold affidavit was irrelevant because it did not show the testing procedures used for his test sample. Without that affidavit, Grimes argues, the evidence does not prove that he tested positive for cocaine. We review the district court's admission of evidence for abuse of discretion. *United States v. Rogers*, 939 F.2d 591, 594 (8th Cir.), *cert. denied*, 502 U.S. 991, 112 S.Ct. 609, 116 L.Ed.2d 632 (1991).

■ At revocation hearings "material that would not be admissible in an adversary criminal trial" may be received where appropriate. *United States v. Bell*, 785 F.2d 640, 642 (8th Cir.1986) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)); *see also* Fed. R.Crim.P. 32.1 advisory committee's note. A relevant factor in determining admissibility is the reliability of the offered evidence, and urinalysis laboratory reports may "bear substantial indicia of reliability." *Bell*, 785 F.2d at 643.

■ Although the Fretthold affidavit refers to three urine samples which are unrelated to this case, it also explains the testing and quality control procedures utilized by PharmChem. For that reason it tends to show the scientific methods used to test the specimen provided by Grimes and was therefore relevant to the issue of whether Grimes tested positive for cocaine. The district court did not abuse its discretion in admitting the affidavit.

■ The other evidence in the record supports the district court's conclusion that Grimes tested positive for cocaine. The laboratory reports bore indicia of reliability. Grimes certified that the urine sample he provided was sealed in his presence and assigned a particular specimen number. The technician who performed the laboratory tests certified that the specimen he tested had been properly sealed and that its label bore the identification number reported by Grimes. He further certified that it had been examined, handled, and analyzed in accordance with applicable requirements. This evidence was sufficient to allow the district court to conclude that the specimen which tested positive had been provided by Grimes, and that it had been collected and tested in accordance with the probation office handbook and the procedures outlined in the Fretthold affidavit. We conclude that the district court did not abuse its discretion in admitting the disputed evidence, and the evidence was sufficient to permit a finding that Grimes had violated the condition prohibiting use of controlled substances.

After thoroughly considering the points raised, we find no reversible error and therefore affirm.