1999 SD 4

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Fred Albert CHRISTIAN, Defendant and Appellant.**

**No. 20466.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 3, 1998.

Decided Jan. 13, 1999.

Mark Barnett, Attorney General, Michele K. Bennett, Assistant Attorney General, Pierre, for plaintiff and appellee.

Mark Kadi, Minnehaha County Public Defender's Office, Sioux Falls, for defendant and appellant.

SABERS, Justice.

[¶ 1.] Christian appeals the revocation of his suspended sentence. We reverse and remand.

## FACTS

[¶ 2.] Christian was convicted of aggravated assault by a Minnehaha County jury on July 23, 1996. He was sentenced on October 24, 1996 to an indeterminate sentence in the state penitentiary of not less than three years and not more than eight years. The trial judge suspended the sentence upon several conditions, including that he serve 120 days in the county jail and "pay restitution of at lea[s]t $600 for out of pocket expenses through Court Services, to be paid within three years." He was placed on formal probation for three years.

[¶ 3.] On October 2, 1997, the State filed a motion to revoke his suspended sentence. An amended motion was filed on October 9. Both motions were "based on the Defendant's violation of the terms of the suspended sentence based on the attached violation report." The violation report was not attached to either motion.

[¶ 4.] Christian failed to appear at the scheduled hearing. A bench warrant was issued for his arrest. He was incarcerated on November 30, 1997 and remained in custody until the revocation hearing on December 29.

[¶ 5.] Christian applied for a court-appointed attorney on December 1. His application was denied on December 2. The magistrate judge denied the application because Christian stated on his application that he was employed. Therefore, he needed to contact three private attorneys before the court would appoint counsel. He claims he was not notified of the reason his application was denied.

[¶ 6.] Christian appeared without counsel at the revocation hearing December 29. The trial court noted that he had applied for court-appointed counsel and was denied, but did not investigate any further. The trial court notified the State that the violation report had not been filed. The State provided the trial court a copy of the report. Christian was not provided a copy. The trial court verbally conveyed the contents of the report to Christian. The State claimed he failed to report to his court services officer and failed to make restitution payments. Christian admitted the violations.

[¶ 7.] Although Christian had not spoken to his employer while incarcerated, he believed he was still employed. He owed $580 in restitution. He told the trial court that he could pay $200 by January 2, 1998 and make weekly payments of $100 thereafter until the restitution was paid. The trial court entered an order requiring him to do so and extended his probation an additional year.

[¶ 8.] The State filed a second motion to revoke Christian's suspended sentence on January 12, 1998. A handwritten violation report was filed with the motion. It stated that he had not paid restitution as ordered at the hearing of December 29.

[¶ 9.] Christian failed to appear at the revocation hearing scheduled for February 3. A bench warrant was issued for his arrest and he was incarcerated on February 12. The revocation hearing was rescheduled for March 3. Christian was represented by court-appointed counsel at the revocation hearing and filed a motion to dismiss, claiming: 1) the initial restitution order required payment within three years and as such time had not passed, he could not be in violation of that condition; 2) he was not represented by counsel at the December 29 hearing where a payment schedule was ordered; and 3) he

was not aware that he had lost his job when he agreed to the payment schedule. He asked the trial court to dismiss the pending revocation motion and vacate its prior order.

[¶ 10.] The trial court revoked Christian's suspended sentence and ordered him to serve not less than three years and not more than eight years in the state penitentiary. It also ordered that he not be released until the restitution is paid.

[¶ 11.] Christian appeals the revocation of his suspended sentence.

### STANDARD OF REVIEW

[¶ 12.] SDCL 23A–27–18 grants the trial court the authority to "suspend the execution of any sentence imposed during good behavior, subject to such conditions or restitution as the court may impose." "A suspended sentence is an act of grace and the decision to so suspend is within the trial court's discretion." *State v. Bell*, 369 N.W.2d 140, 142 (S.D.1985) (citing *State* ex rel. *Caldwell v. Skinner*, 59 S.D. 68, 75, 238 N.W. 149, 152 (1931)). "The revocation of a suspended sentence, however, is not a decision to be made at the court's pleasure." *Bell*, 369 N.W.2d at 142 (citing *Application of Jerrel*, 77 S.D. 487, 492, 93 N.W.2d 614, 617 (1958)).

> [P]roof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation. A judge in such proceeding need not have evidence that would establish beyond a reasonable doubt guilt of criminal offenses. All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.

*Bell*, 369 N.W.2d at 142 (alterations in original) (quoting *State v. Elder*, 77 S.D. 540, 544, 95 N.W.2d 592, 594 (1959) (citation omitted)).

[¶ 13.] **1. WHETHER CHRISTIAN WAS DENIED DUE PROCESS AT THE REVOCATION HEARING ON DECEMBER 29, 1997 BECAUSE HE DID NOT RECEIVE PRIOR WRITTEN NOTICE OF THE ALLEGED VIOLATION AND WAS WITHOUT COUNSEL.**

[¶ 14.] Christian raises several issues on appeal. One issue is determinative be-

cause the failure to comply with the payment schedule of December 29 was the basis for the revocation of the suspended sentence.

[¶ 15.] "The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano*, 471 U.S. 606, 610, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636, 642 (1985) (citing *Bearden v. Georgia*, 461 U.S. 660, 666, and n.7, 103 S.Ct. 2064, 2069, and n.7, 76 L.Ed.2d 221 (1983)). In *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973), the Supreme Court declined to find a per se constitutional right to appointed counsel in all probation and parole revocation cases. It decided that a case-by-case approach should be taken. *Id.*

[¶ 16.] However, the Supreme Court set out the "minimum requirements of due process" for revocation hearings:

(a) written notice of the claimed violations of [probation or] parole;

(b) disclosure to the [probationer or] parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.

*Id.* at 786, 93 S.Ct. at 1761–62 (alterations in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)).

[¶ 17.] However, South Dakota has statutorily provided for the appointment of counsel

for indigents in actions for revocation of suspended sentences. SDCL 23A–40–6 provides, in part:

In any criminal investigation or in any criminal action *or action for revocation of suspended sentence or probation* in the circuit or magistrate court or in a final proceeding to revoke a parole, if it is satisfactorily shown that the defendant or detained person does not have sufficient money, credit or property to employ counsel and pay for the necessary expenses of his representation, the judge of the circuit court or magistrate *shall*, upon the request of defendant, assign, at any time following arrest or commencement of detention without formal charges, counsel for his representation, who shall appear for and defend the accused upon the charge against him, or take other proper legal action to protect the rights of the person detained without formal charge.

(Emphasis added).

[¶ 18.] Christian applied for court-appointed counsel which was denied by a magistrate judge. A box on the application was checked which stated the reason for the denial was "[e]mployed but no contact w/ 3 lawyers." He claims jail personnel did not tell him the reason for the denial. Christian was incarcerated at the time he applied and remained in custody until the hearing of December 29. He was not in contact with his employer during that time, but he believed he was still employed. Christian's court services officer, William Clayton, testified at the March 3 revocation hearing that a person in jail would only be able to contact three attorneys if the attorneys would accept the telephone calls.* He stated: "Unless he has the funds to pay for the phone calls when he is incarcerated, he can't make phone calls is my understanding."

[¶ 19.] The trial court did not pursue Christian's lack of counsel at the hearing of December 29. The transcript of the hearing provides:

THE COURT: I want to advise you you have a right to a lawyer, and if you can't afford one, I will appoint one for you. You applied for one. Did you get one appointed?

CHRISTIAN: No, sir.

THE COURT: You got turned down.

The trial court did not inquire whether Christian sought private counsel. He did not determine whether Christian wished to proceed without counsel. He simply noted that Christian had been denied court-appointed counsel and proceeded on with the hearing.

[¶ 20.] The Supreme Court in *Gagnon* recognized that the effectiveness of minimum requirements of due process "may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess." *Gagnon*, 411 U.S. at 786, 93 S.Ct. at 1762. The State failed to file a copy of the violation report with the motion to revoke Christian's suspended sentence. Without the assistance of counsel, Christian lacked the knowledge and skills to effectively challenge this denial of due process.

[¶ 21.] "A violation report is similar to a pleading. The purpose of a pleading is to frame the issues upon which the case is to be tried and to advise the opposing party of what he is called upon to meet." *In re Brown*, 1997 SD 133, ¶ 10, 572 N.W.2d 435, 437 (citing *Gross v. Gross*, 355 N.W.2d 4, 8 (S.D.1984) (citing *Bristow v. Western Surety Co.*, 76 S.D. 362, 78 N.W.2d 734, 736 (1956))). We held in *State v. McCormick*, 385 N.W.2d 121, 123 (S.D.1986) (citations omitted) that written notice of claimed violations is one of the minimum due process requirements of parole or probation revocation:

The purpose of the requirement that written notice be given prior to such proceedings is to insure that the parolee or probationer is able to sufficiently prepare his case, both against the allegations of violations and against the contention that the violations, if proven, demonstrate that parole or probation is no longer an effective rehabilitative tool and should be revoked.

* Mr. Clayton also attended the hearing of December 29.

In other words, the requirement bears directly upon the ability to contest revocation proceedings.

[¶ 22.] Christian did not receive prior written notice of the alleged violations. As a layperson he lacked the legal knowledge and expertise to assert that his right to due process was denied by the lack of prior written notice. Counsel could have objected to the proceedings and alerted the trial court to the procedural problem. In fact, many of the issues raised by Christian on appeal may have been avoided if competent counsel had been appointed at the December 29 hearing. Counsel could have investigated Christian's employment status prior to the hearing. With accurate information, a more realistic payment schedule could have been presented to the trial court. Instead, Christian suggested a payment schedule based on his mistaken assumption that he was still employed. His inability to comply with that schedule provided the basis for the subsequent revocation of his suspended sentence.

[¶ 23.] The State claims Christian waived his right to counsel and his right to notice. We disagree.

[A] waiver must be made voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. The waiver of a constitutional right must be positively established, and the burden is on the party alleging waiver as courts closely scrutinize such allegations, indulging every reasonable presumption against waiver. When determining whether a constitutional right has been waived, this court looks to the totality of the circumstances.

Smith v. Board of Pardons and Paroles, 515 N.W.2d 219, 225 (S.D.1994) (alteration in original) (quoting McCormick, 385 N.W.2d at 123–24 (citations omitted)). Christian was not asked whether he wished to waive his right to counsel. He was not advised that by admitting the violations he was waiving his right to notice. We find nothing in the record which shows Christian "voluntarily, knowingly, and intelligently" waived his right to counsel or his right to prior written notice of the alleged violations. See Smith, 515 N.W.2d at 225; McCormick, 385 N.W.2d at 124.

[¶ 24.] We find that Christian was denied due process of law by the trial court proceeding with the revocation hearing on December 29, 1997 when he was not represented by counsel and had not received prior written notice of the alleged violations of his suspended sentence. Since violation of the payment schedule provided the basis for revocation of his suspended sentence, we reverse and remand. Since this issue is dispositive, it is unnecessary to address any other issues.

[¶ 25.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.