2000 SD 141

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**David G. BECK, Defendant and Appellant.**

**No. 21137.**

Supreme Court of South Dakota.

Considered on Briefs on May 30, 2000.

Decided Nov. 15, 2000.

---

Mark Barnett, Attorney General, Michele K. Bennett, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Deborah A. Birgen, Sioux Falls, SD, Attorney for defendant and appellant.

AMUNDSON, Justice

[¶ 1.] David Beck appeals the revocation of his probation and the jail sentence imposed after the revocation. We reverse and remand.

## FACTS

[¶ 2.] On August 31, 1998, Beck was indicted in Lincoln County, South Dakota

for one count of possession of less than one-half pound of marijuana. The offense carried a maximum penalty at that time of one year in the county jail and/or a fine of one thousand dollars. *See* SDCL 22–42–6 (Supp.1997); SDCL 22–6–2(1). After plea bargaining, Beck entered a guilty plea to the marijuana charge on September 8, 1998. He was sentenced to one year in the county jail and fined $250. The jail sentence was suspended and Beck was placed on probation for two years. The conditions of probation included a requirement that Beck should "obey all federal and state laws and municipal ordinances." The conditions also included a requirement that Beck notify his court services officer of any change in his employment, educational or residency status.

[¶ 3.] As a result of his probationary status, Beck was also subject to periodic urinalysis. A court services officer obtained a urine sample from Beck on March 10, 1999 and submitted the sample to the State Health Laboratory for analysis. On March 15, the laboratory reported that Beck's THC screen for marijuana use and his amphetamine/methamphetamine screen were positive. That same date, the court services officer issued a probation violation report based upon the requirement that Beck obey all federal and state laws and municipal ordinances. Three days later, the State filed a petition to revoke Beck's probation.

[¶ 4.] On March 22, Beck was served with notice of the petition for revocation of his probation and notice of a revocation hearing set for April 5. Beck failed to appear for the hearing and a bench warrant was issued for his arrest. On April 21, a second probation violation report was filed alleging that Beck had absconded from the jurisdiction.

[¶ 5.] Beck was eventually apprehended and a new probation violation hearing was set for July 21. Only Beck's court services officer testified at the hearing. However, over Beck's objection, the State also introduced the written laboratory report indi-

cating his positive drug tests. At the close of the hearing, the trial court found Beck violated his probation by using marijuana and/or amphetamines/methamphetamine and by failing to appear for his first probation revocation hearing. On that basis, the trial court revoked Beck's probation and sentenced him to the county jail for 365 days. Beck appeals.

### ISSUE 1

[¶ 6.] **Is the evidence sufficient to sustain the revocation of Beck's probation?**

[¶ 7.] The standard of review in probation revocation cases is set forth in *State v. Christian*, 1999 SD 4, ¶ 12, 588 N.W.2d 881, 883:

"The revocation of a suspended sentence ... is not a decision to be made at the court's pleasure." *Bell*, 369 N.W.2d at 142 (citing *Application of Jerrel*, 77 S.D. 487, 492, 93 N.W.2d 614, 617 (1958)).

[P]roof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation. A judge in such proceeding need not have evidence that would establish beyond a reasonable doubt guilt of criminal offenses. All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.

*Bell*, 369 N.W.2d at 142 (alterations in original) (quoting *State v. Elder*, 77 S.D. 540, 544, 95 N.W.2d 592, 594 (1959) (citation omitted)).

[¶ 8.] Beck argues that, even under this burden of proof, there is insufficient evidence to sustain the revocation of his probation. He contends the evidence is insufficient because the trial court erred in admitting the written Health Lab report into evidence. Absent that report, Beck asserts there is insufficient evidence he violated his probation.

[¶ 9.] Beck argues the trial court erred in admitting the lab report because it failed to require live foundation testimony from the person who prepared it. Beck contends such a procedure violates the Confrontation Clause. He further contends an inadequate foundation was laid for the report's introduction and that the State failed to establish a sufficient chain of custody over his urine sample to warrant admission of the report.

[¶ 10.] SDCL 23–3–19.3 provides:

A copy of a statement of the methods and findings of any examination or analysis conducted by employees of the state forensic laboratory or by a certified chemist employed by a law enforcement agency within the state, authenticated under oath by the employee, is prima facie evidence in all grand jury and court proceedings in the State of South Dakota of the facts contained therein reciting the methods and findings.

The statement has the same force and effect as if the person who performed the analysis or examination had testified in person. An accused person or the accused's attorney may request that the person in the state forensic laboratory or the certified chemist employed by a law enforcement agency within the state, who conducted the examination testify in person at a criminal trial concerning the examination or analysis.

While on its face, this statute would appear to support the admission of the lab report into evidence, the lab report was not "authenticated under oath" as the statute requires. Moreover, a statute is subject to Constitutional standards and limitations. In *United States v. Bell*, 785 F.2d 640 (8th Cir.1986), the United States Court of Appeals for the Eighth Circuit specifically considered the admissibility of written urinalysis reports in probation revocation proceedings in light of Confrontation Clause requirements. The court observed:

In [*Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ], the Supreme Court held that the Sixth Amendment confrontation clause affords parolees in parole-revocation proceedings

the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation). [But such proceeding nevertheless is a] narrow inquiry ... flexible enough to consider ... material that would not be admissible in an adversary criminal trial.

408 U.S. at 489, 92 S.Ct. at 2604. [*Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ] held that probationers are entitled to the same rights as *Morrissey* held applicable to parolees. 411 U.S. at 782, 93· S.Ct. at 1759.

*Bell*, 785 F.2d at 642.

[¶ 11.] Recognizing the need to balance Confrontation Clause requirements with legitimate government concerns over "the difficulty and expense of procuring distant witnesses" (*Bell*, 785 F.2d at 642), the court went on to hold in *Bell* that:

[T]he trial court in a probation-revocation proceeding must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation. As is true of any balancing test, it is not possible to articulate fixed rules on what the government must show to establish "good cause" in every case. However, there are several factors which should be evaluated in examining the basis cited by the government for dispensing with confrontation.

First, the court should assess the explanation the government offers of why confrontation is undesirable or impractical. For example, the government might contend that ... procuring live witnesses would be difficult or expensive.

A second factor that must be considered, and one that has been focused upon by a number of courts, is the reliability of the

evidence which the government offers in place of live testimony. Thus, where the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause. Where, on the other hand, the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation.

\*   \*   \*   \*   \*   \*

The urinalysis laboratory reports bear substantial indicia of reliability. They are the regular reports of a company whose business it is to conduct such tests, and which expects its clients to act on the basis of its reports. Moreover, we note that no evidence was presented to contradict [the probationer's] drug usage, and that [the probationer] has made only general, unsubstantiated claims that the laboratory tests may have been defective. We conclude that under these circumstances there was good cause to permit the government to avoid the difficulty and expense of bringing the chemist or chemists who performed the tests from California to Arkansas to testify. In our experience, that sort of formal testimony rarely leads to any admissions helpful to the party challenging the evidence.

*Bell,* 785 F.2d at 642–43 (citations and footnotes omitted).

[¶ 12.] The principles enunciated in *Bell* were more recently applied by the Eighth Circuit in *U.S. v. Grimes,* 54 F.3d 489 (8th Cir.1995). In *Grimes,* a probationer's supervised release was revoked after a positive cocaine test. During the revocation hearing, the probationer denied using cocaine, but the government introduced a laboratory report indicating his urine sample had tested positive for the substance. The government also offered a chain of custody form on which the probationer had

certified that the urine specimen he provided was sealed in his presence and was assigned a particular specimen number. The laboratory report contained a certification from the technician who tested the specimen that its identification number matched the one referenced by the probationer, that it arrived at the laboratory properly sealed and that the specimen was, "examined, handled, and analyzed in accordance with applicable requirements." *Grimes,* 54 F.3d at 490. The government also offered an affidavit from the laboratory's director of toxicology describing the laboratory's standard testing methodologies and quality control procedures. The probationer objected to admission of the laboratory report as unreliable and incomplete and to the director's affidavit as irrelevant because it did not explain the testing procedures used in his particular case. The government contended the affidavit demonstrated the reliability of the test results. The trial court admitted the disputed evidence, found that the urine sample provided by the probationer had tested positive for cocaine and further found that the probationer had violated the conditions of his supervised release. In reviewing the sufficiency of the evidence on appeal, the court held:

> The other evidence in the record supports the district court's conclusion that [the probationer] tested positive for cocaine. The laboratory reports bore indicia of reliability. [The probationer] certified that the urine sample he provided was sealed in his presence and assigned a particular specimen number. The technician who performed the laboratory tests certified that the specimen he tested had been properly sealed and that its label bore the identification number reported by [the probationer]. He further certified that it had been examined, handled, and analyzed in accordance with applicable requirements. This evidence was sufficient to allow the district court to conclude that the specimen which tested positive had been provided by

[the probationer], and that it had been collected and tested in accordance with the probation office handbook and the procedures outlined in the [director's] affidavit. We conclude that the district court did not abuse its discretion in admitting the disputed evidence, and the evidence was sufficient to permit a finding that [the probationer] had violated the condition prohibiting use of controlled substances.

*Grimes*, 54 F.3d at 493.

■ [¶ 13.] The trial court in the instant case failed to follow the requirements of SDCL 23–3–19.3 for introduction of the lab report and followed none of the safeguards outlined in *Bell* and *Grimes* for the protection of Beck's rights of confrontation. Under SDCL 23–3–19.3, the lab report should have been "authenticated under oath" as a predicate for its admission. It was not. Moreover, with regard to the safeguards outlined in *Bell* and *Grimes*, there was no on-record balancing of confrontation rights against the grounds asserted by the State for not requiring confrontation nor were there any findings of good cause for dispensing with confrontation. Although the lack of such findings is not, in itself, fatal to admission of a written lab report (*see Bell*, 785 F.2d at 643 n. 3), it inhibits development of a complete record as to why confrontation is undesirable or impractical. More importantly, it inhibits development of a complete record on the reliability of the evidence the government is offering in the place of live testimony.

[¶ 14.] In this case, in contrast with *Grimes, supra,* a complete record was not developed on the chain of custody of Beck's urine sample or on the methodology or quality control procedures followed by the Health Lab in analyzing the sample. In short, no record was developed on the reliability of the lab report. Absent a demonstration of reliability, the trial court erred in admitting the lab report into evidence. *Bell, supra; Grimes, supra.* Moreover, absent the lab report, there is no evidence of a probation violation by

Beck. His failure to appear at his initial revocation hearing cannot be relied upon in this regard because the record fails to reflect he ever received written notice that his failure to appear could serve as grounds to revoke his probation. *See Christian, supra* (written notice of claimed violations is one of the minimum due process requirements of parole or probation revocation).

■ [¶ 15.] The dissent would ignore these errors on the grounds of a waiver predicated on Beck's failure to assert his confrontation rights before the trial court in the form of a more specific objection to the introduction of the lab report. Beck did, however, object to the adequacy of the foundation for admission of the report and the foregoing authorities clearly establish the foundation *was* deficient. Moreover, this Court may address constitutional issues sua sponte. *See Bayer v. Johnson,* 349 N.W.2d 447, 449 (S.D.1984). *See* also *State v. Baker,* 440 N.W.2d 284, 293 (S.D. 1989). It is particularly important that it do so "when the constitutional question is a matter of considerable importance to the public policy of the state." *Boever v. South Dakota Bd. of Accountancy,* 526 N.W.2d 747, 751 (S.D.1995). Here, the constitutional question involves the State's reliance on an evidentiary statute of questionable constitutional validity (*i.e.,* SDCL 23–3–19.3) and the resultant disregard of fundamental constitutional rights. In such circumstances, it is entirely appropriate for this Court to address the issue sua sponte even if the objection before the trial court was inartful or otherwise insufficient to preserve the error for review. *See Gallion v. State,* 469 So.2d 1247, 1249 (Miss.1985)(exception to rule that questions cannot be raised for first time on appeal exists where errors at trial affect fundamental rights). *See also United States v. Ordonez,* 737 F.2d 793, 799 (9th Cir.1983)(contention that government failed to comply with confrontation clause

involves substantial rights which must be reviewed even absent a timely objection).[1]

[¶ 16.] Based upon the foregoing, the revocation of Beck's probation is reversed and the matter is remanded for a trial court determination of the reliability of the lab test results and the admissibility of those results pursuant to the requirements set forth above. This certainly does not place too onerous a burden on counsel and the court when dealing with a basic constitutional right such as confrontation. Given our resolution of this issue, it is unnecessary to address Beck's remaining issues.

[¶ 17.] Reversed and remanded.

[¶ 18.] SABERS and KONENKAMP, Justices, concur.

[¶ 19.] MILLER, Chief Justice, and GILBERTSON, Justice, dissent.

GILBERTSON, Justice (dissenting).

[¶ 20.] I respectfully dissent.

[¶ 21.] I agree with the Court that SDCL 23-3-19.3 on its face provides support for admission of the lab report into evidence. However, the Court seeks to go beyond this evidentiary issue and enters the realm of constitutional law by engaging in confrontation clause analysis. The confrontation clause rationale relied upon by this Court was never raised at the revocation hearing nor was it properly raised by Beck in this appeal.

[¶ 22.] At the revocation hearing, Beck did not seek an opportunity to exercise his rights under the confrontation clause by confronting and cross-examining Stacy Ellwanger of the State Health Laboratory who authored the report, despite the fact that confrontation rights are specifically recognized by SDCL 23-3-19.3. Beck's objection was limited to foundational and chain of custody grounds:

> Your Honor, I would object. I see no certification or signature from Stacy Ellwanger, who's reported to be the chemist on that. I also would object because there is a lack of sufficient foundation in regards particularly to the chain of evidence and chain of custody.

This Court has consistently held that issues should be handled by the trial court and not brought up for the first time on appeal to this Court. *Satellite Cable Services, Inc. v. Northern Electric*, 1998 SD 67 ¶ 10, 581 N.W.2d 478, 481.

[¶ 23.] Beyond that default at the hearing, the confrontation clause issue was also never properly raised by Beck in this appeal. SDCL 15-26A-60 states in part: "[t]he brief of the appellant shall contain ... (4)[a] concise statement of the legal issue or issues involved...." The issue as framed by Beck and discussed by this Court is as follows: "[i]s the evidence sufficient to sustain the revocation of Beck's probation?" The issue as drafted by Beck makes no claim of a constitutional violation of any kind.

[¶ 24.] In addition, neither brief prepared by Beck makes any reference to either the Sixth Amendment to the United States Constitution or article VI section 7 of the South Dakota Constitution. There is also no citation in his first brief to any case law authority along this line. Failure to cite supporting authority results in a waiver of that claim. *State v. Pellegrino*, 1998 SD 39, ¶ 22, 577 N.W.2d 590, 599 (citing to SDCL 15-26A-60(6)).

---

1. The dissent asserts that confrontation clause issues were not raised by Beck in this appeal. However, in his principal brief, Beck asserts that, "[b]y failing to provide even affidavits showing that the proper chain of custody was observed, the Defendant was denied his right to confront his witnesses." In his reply brief, Beck further elaborates that "[w]hile the rules of evidence do not apply [in probation revocation hearings], the Defendant does not lose all constitutional rights of confrontation. *United States v. Reynolds*, 49 F.3d 423 (8th Cir. 1995)." The State's brief addressed the confrontation argument with the observation that "a probation revocation proceeding is not a criminal proceeding, and the burden of proof is not the same." Thus, confrontation · was raised and addressed by both parties to this appeal.

[¶ 25.] Understandably the State's brief never mentions the words "confrontation clause" or anything akin to it and the Court's citation in footnote one to the quote from the State's brief is an admission as such. Thus, the reference to the comment by Beck in his rebuttal brief to the confrontation clause is in violation of SDCL 15–26A–62: "[t]he appellant may file a brief in reply to the brief of the appellee. The reply brief must be confined to new matter raised in the brief of the appellee."

[¶ 26.] Beyond the issue of proper application of the numerous procedural defaults in this case by Beck, most troublesome is the Court's addressing the confrontation clause issue sua sponte. This denies us a properly developed record and the benefit of proper briefing and appellate argument. A review of the authority cited by the Court, *Bayer v. Johnson*, 349 N.W.2d 447, 449 (S.D.1984), and *State v. Baker*, 440 N.W.2d 284, 293 (S.D.1989) shows that the invocation of this doctrine has been used most sparingly and then only in important cases of permanent state wide implication. I respectfully submit that invocation of that doctrine in this case is not appropriate. The Court concedes that its recognition of a confrontation clause violation merely results in a remand for a new hearing at which time all the State has to do is little more than to produce the same document this time with proper authentication.

[¶ 27.] There is sufficient evidence to sustain the revocation. I would affirm the circuit court on all issues and for the above reasons respectfully dissent.

[¶ 28.] MILLER, Chief Justice, joins this dissent.