**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

_____

**No. 00-3790**

_____

|                                    |   |                           |
|------------------------------------|---|---------------------------|
| UNITED STATES OF AMERICA,          | * | Appeal from the United    |
|                                    | * | States District Court     |
| Plaintiff - Appellee,              | * | for the Southern          |
|                                    | * | District of Iowa          |
| v.                                 | * |                           |
|                                    | * | [UNPUBLISHED]             |
|                                    | * |                           |
| ROBERT EUGENE KEY,                 | * |                           |
|                                    | * |                           |
| Defendant - Appellant.             | * |                           |
|                                    | * |                           |

_____

Submitted: June 12, 2001
Filed: July 2, 2001

_____

Before WOLLMAN, Chief Judge, HAMILTON[1] and MURPHY, Circuit Judges.

_____

PER CURIAM.

On October 23, 1991, a federal grand jury sitting in the Southern District of Iowa charged Robert Eugene Key (Key) with one count of bank robbery, 18 U.S.C. § 2113(a). On February 13, 1992, Key pled guilty to the charge. On May 29, 1992, the district court sentenced Key to eighty-nine months' imprisonment with three years of supervised release, and the district court's judgment was entered on June 2, 1992. Key served his prison sentence and was placed on supervised release in June 1999. On October 31, 2000, the district court held a revocation hearing, and, at the conclusion of the hearing, found that Key violated the terms of his

_____

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

supervised release by committing perjury at a previous revocation hearing on June 19, 2000. The district court sentenced Key to eighteen months' imprisonment with eighteen months of supervised release. The judgment of the district court[2] was entered on October 31, 2000. Key appeals, and we now affirm.

I

The judgment entered by the district court in June 1992 contained the standard litany of conditions governing a term of supervised release. Under the standard conditions, Key, among other things, could not "commit another federal, state or local crime," could not use "any narcotic or controlled substance . . . except as prescribed by a physician," had to "work regularly at a lawful occupation," had to "notify the probation officer within 72 hours of any change in residence or employment," and had to "submit a truthful and complete written report within the first five days of each month." The June 1992 judgment also contained a special condition, requiring Key to participate "in a program of testing and treatment for drug use, as directed by the Probation Officer, until such time as the defendant is released from the program by the Probation Officer." Consistent with this directive, on March 10, 2000, another special condition was placed upon Key, requiring him to "reside, participate and follow the rules of a community corrections center program as directed by the Probation Officer for up to 120 days."

On March 23, 2000, Key reported to the community corrections center program. On May 8, 2000, he was "unsuccessfully discharged due to drug use."

On May 17, 2000, Key's probation officer filed a "Petition for Warrant or Summons for Offender Under Supervision." The petition alleged that Key violated the terms of his supervised release by testing positive for marijuana on nine occasions and by failing to complete the community corrections center program.

---

[2]The Honorable Richard E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

On June 14, 2000, Key's probation officer filed an addendum to the petition filed on May 17, 2000. The addendum alleged that Key violated the terms of his supervised release by testing positive for marijuana on two more occasions, by failing to report for a urine test, and by failing to notify his probation officer of a change in his employment status.

On June 19, 2000, the district court held a revocation hearing. One of the issues before the district court concerned Key's employment status; that is, whether he failed to notify his probation officer about a change in his employment status. At the revocation hearing, Key took the witness stand and was placed under oath. Key testified that he started working as a cook at the Flying J Travel Plaza in mid-May 2000 and left that job in early June for a job at Scotty's Auto Body Shop. As reflected on page nine of the revocation hearing transcript, Key testified, on direct examination, as follows:

Q.   Now, are you currently employed?

A.   Yes, I am.

Q.   Where are you working now?

A.   At Scotty's Auto Body Shop.

Q.   How many hours a week do you work there?

A.   It varies.  It depends on how many cars are in there.

Q.   What do you do?

A.   Detail after the cars are-- Cars come in wrecked. They're fixed.  They get painted.  After the paint comes all the detailing.

Q.   When did you start working at Scotty's Auto Body Shop?

A.   About 2 ½ weeks ago.

Q.   In relation to when you stopped working at Flying J Truck Stop, when did you start working at Scotty's?

A.    Immediately.

Following his testimony, Key was excused from the witness stand and returned to his seat at his counsel's table.

A lengthy discussion between counsel and the district court concerning the appropriate disposition of the case ensued.  At the conclusion of the colloquy, the district court decided to give Key "one more chance."  While it was making its ruling, the district court engaged in the following colloquy with Key, which appears on page thirty-two of the revocation hearing transcript:

THE COURT:      How long you been working there, 2 ½ weeks?

THE DEFENDANT: Yes, sir.

THE COURT:      And how many hours a week, average, have you been working?

THE DEFENDANT: It's going to be anywhere from 35 plus.

THE COURT:      What do you get paid?

THE DEFENDANT: I get paid $7.50.

THE COURT:      And what type of hours are there?

THE DEFENDANT: Excuse me?

THE COURT:      When do you work, from when to when?  Do you have any set hours?

THE DEFENDANT: I go in about 7:30, 8:00.

THE COURT:      And work as long as there's cars there?

THE DEFENDANT: Yes, sir.

THE COURT:      Okay.  Five days a week?

THE DEFENDANT: Yes, sir.

On August 16, 2000, Key's probation officer filed another "Petition for Warrant or Summons for Offender Under Supervision." The petition alleged that Key violated the terms of his supervised

release by testing positive for marijuana on ten more occasions, by testifying falsely at the June 19, 2000 revocation hearing, by operating a motor vehicle while under suspension, by failing to appear for a court date related to the operating a motor vehicle while under suspension charge, by failing to attend a drug counseling session, by failing to submit pay stubs for the months of May and June 2000, and by failing to submit a monthly report for July 2000.

On September 12, 2000, Key's probation officer filed yet another "Petition for Warrant or Summons for Offender Under Supervision." The petition alleged that Key violated the terms of his supervised release by testing positive for marijuana on three more occasions, by failing to provide urine samples on two occasions, by failing to appear for two more drug counseling sessions, and by failing to submit a monthly report for August 2000.

On September 14, 2000, Key's probation officer filed another "Petition for Warrant or Summons for Offender Under Supervision." The petition alleged that Key violated the terms of his supervised release by failing to report a change of address.

The district court convened another revocation hearing on October 31, 2000. Because the parties agreed that Key's alleged perjury, at the June 19, 2000 revocation hearing, was the most serious of the alleged supervised release violations, the parties agreed to bifurcate and hear first the issues concerning Key's perjury.

At the October 31, 2000 revocation hearing, Christopher Scott Buchanan, the owner of Scotty's Auto Body Shop, testified that, on June 19, 2000, Key was not employed at Scotty's Auto Body Shop. He also testified that Key was never employed at Scotty's Auto Body Shop, that he never agreed to employ Key there, and that he never agreed to pay Key "$7.50-an-hour for working anywhere from 35-plus hours a week at Scotty's Auto Body Shop."

Robert Lee Buchanan (Robert Buchanan), the manager of Scotty's Auto Body Shop, testified that Key was never employed at Scotty's Auto Body Shop and that he had never been employed at an hourly rate at Scotty's Auto Body Shop, or a related business, Scotty's Auto Body Sales.[3]  He also testified that Key wanted to get into the business of automobile sales.  Robert Buchanan acknowledged that he had a "subcontractor" relationship with Key; if Key found a used automobile that needed work, Scotty's Auto Body Sales would buy the automobile, repair it, and try to sell it at a profit.  Under this arrangement, Key would receive a percentage of the profit.  Robert Buchanan testified that he never purchased an automobile pursuant to his agreement with Key, although he did deduct approximately $350 from the amount Key owed Scotty's Auto Body Shop for repairs completed on Key's automobile because Key spent some time looking for used cars for Scotty's Auto Body Sales to buy.

Following the arguments of counsel, the district court revoked Key's supervised release.  In making its ruling, the district court stated:

> As far as I'm concerned, even confining myself to the testimony on page 9, Mr. Key directly and clearly committed perjury before me in my court.  I think he committed further perjury on page 32 when he responded to my questions falsely.
>
> I do not accept your argument that merely by stepping down and assuming a place at counsel table he is no longer under oath when the Court asks him a question.  I think he testified falsely in both instances.  He gave details about his employment, his wage.  I gave Mr. Key a real break back in June.  I should have revoked then and I didn't because I wanted to give him one more chance.  He sat there and lied to me.  He's out of chances.

The district court sentenced Key to eighteen months' imprisonment with eighteen months of supervised release.

---

[3]Scotty's Auto Body Sales, d/b/a First Class Auto, is located approximately two blocks from Scotty's Auto Body Shop.

When a district court finds by a preponderance of the evidence that a defendant has violated a condition of his supervised release, the district court may revoke the defendant's supervised release and impose a term of imprisonment without credit for time previously served on post-release supervision. 18 U.S.C. § 3583(e)(3). We review the district court's decision revoking a term of supervised release for an abuse of discretion. United States v. Grimes, 54 F.3d 489, 492 (8th Cir. 1995).

One of the conditions of Key's supervised release was that he not commit a violation of federal law. At the October 31, 2000 revocation hearing, the district court found that Key twice committed perjury at the June 19, 2000 revocation hearing. First, the district court opined that Key's testimony on direct examination concerning his employment (appearing on page nine of the June 19, 2000 revocation hearing transcript) was perjured; second, the district court opined that, while it was making its ruling, Key's answers to its questions (appearing on page thirty-two of the June 19, 2000 revocation hearing transcript) were perjured.

Under federal law,

[w]hoever–

>    (1)  having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . .

is guilty of perjury.

18 U.S.C. § 1621(1). In this circuit, "[a] witness testifying under oath commits perjury if he 'gives false testimony concerning a material matter with the willful intent to provide false

testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Plumley, 207 F.3d 1086, 1095 (8th Cir. 2000) (quoting United States v. Dunnigan, 507 U.S. 87, 94 (1993)).

A

Key argues that he did not commit perjury at the June 19, 2000 revocation hearing because the alleged materially false statements were not made under oath. According to Key, at the time he made the alleged materially false statements, he had been excused as a witness and, therefore, he was no longer under oath.

For two reasons, Key's argument misses the mark. First, Key's argument ignores the district court's finding that he committed perjury while testifying on direct examination. While under oath on the witness stand, Key testified that he was working at Scotty's Auto Body Shop detailing cars for about two and one-half weeks. This testimony was materially false. Second, Key cites no case law for the proposition that he was no longer under oath when he answered the district court's questions from his counsel's table. In fact, the case law points in the other direction.

In Barnes v. United States, 378 F.2d 646 (5th Cir. 1967), the defendant was charged with committing perjury while testifying at a suppression hearing. Id. at 647. At the suppression hearing, the defendant was called to the witness stand, sworn as a witness, and, in response to questions from counsel, testified that he was not in possession of a gun or a money order when he was arrested. Id. at 651. Following his testimony, he was excused as a witness. Id. The next witness, a police officer, testified that he found a gun and a money order on the defendant's person when he arrested the defendant. Id. Following the testimony of the police officer, the district court asked the defendant to "'come around'" and sit in the witness chair. Id. The defendant complied, but the district court did not readminister an oath. Id. The district court then, in a series of questions, asked the defendant whether he was in possession of a gun or a money order when he was arrested. Id. The defendant stated that he was not in possession of those items. Id. Following a jury trial, the defendant was convicted of perjury. Id. at 647. The jury found that the

- 8 -

defendant committed perjury when he testified that he was not in possession of a gun or a money order when he was arrested both in response to questions from counsel and in response to questions from the district court. Id. at 648-49. On appeal, the defendant argued that the testimony he gave in response to the district court's questions was not perjury because it was not given under oath. Id. at 651. The Barnes court categorically rejected this argument, reasoning that the defendant

> was not told that the questioning by the judge was off the record nor was he informed that such questioning was not part of the proceedings then in progress. We therefore find that the record unequivocally shows that appellant was under oath . . . when he resumed the witness stand at the close of [the police officer's] testimony.

Id.

We see no meaningful difference between the facts of this case and the facts in Barnes, and find Barnes's reasoning applicable in full force to this case. Furthermore, to accept Key's argument would require the district court to readminister an oath to a defendant each time the district court has a question for the defendant after the defendant has testified under oath and left the witness stand. This we decline to do.

B

Key also argues that the district court's finding that he made materially false statements at the June 19, 2000 revocation hearing is not supported by the evidence. As noted above, while testifying on direct examination, Key stated that he was working at Scotty's Auto Body Shop detailing cars for about two and one-half weeks. Further, in response to the district court's questioning, Key stated that he was working at Scotty's Auto Body Shop thirty-five hours a week and being paid $7.50 per hour. All of these statements were materially false. Accordingly, we cannot take issue with the district court's finding that Key made materially false statements at the June 19, 2000 revocation hearing.

III

For the reasons stated herein, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.