2004 SD 131

**The PEOPLE of the State of South Dakota, ex rel SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES**

**In the Interests of J.G.R., a Minor Child, and Concerning M.R. and C.R., Respondents.**

No. 23209.

Supreme Court of South Dakota.

Considered on Briefs Oct. 28, 2004.

Decided Dec. 22, 2004.

Lawrence E. Long, Attorney General, Ann M. Holzhauser, Assistant Attorney General, Pierre, South Dakota, Attorneys for appellee State of South Dakota.

Marty J. Jackley and Jason Smiley, Rapid City, South Dakota, Attorneys for appellant C.R.

Donald E. Covey, Winner, South Dakota, Attorney for minor child J.G.R.

KONENKAMP, Justice.

[¶ 1.] C.R. (mother) appeals the termination of her parental rights. We affirm.

### FACTS

[¶ 2.] On April 25, 2002, mother took the day off from her employment in Winner, South Dakota. Her daughter, J.G.R., age eight, had been expelled from school.

In an apparent effort to leave her with some other caretaker, mother had the child pack a suitcase. They traveled to Hot Springs, South Dakota. At the Fall River Feedlot, mother dropped off the child and drove away. Carrying her suitcase, J.G.R. walked into the office by herself and sat down. After half an hour, an office employee noticed the child sobbing. She had a note her mother had told her to give to "Connie," stating, "Looking for someone who cares." No one named Connie worked there. Mother knew the manager of the feedlot, but she had made no prior arrangements for the child to stay there; no one at the feedlot had prior knowledge that the child was going to be left there; and no one had any idea that they would be expected to care for the child. The child had been to the feedlot once or twice in the past. J.G.R. was taken into protective custody by the sheriff's office. Mother was eventually located six hours later, one hundred fifty miles away, in Belvidere, South Dakota.

[¶ 3.] Mother received a court appointed attorney, Rose Ann Wendell, who appeared at the advisory hearing. Wendell was replaced by private counsel, Stanley Whiting. The adjudicatory hearing was continued as a result. Later, Whiting moved to withdraw based on mother's request. Al Arendt subsequently appeared on behalf of mother at a scheduling hearing. Shortly thereafter, Arendt also moved to withdraw based on a conflict with mother. Arendt was allowed to withdraw but the trial court indicated that the adjudicatory hearing would proceed as scheduled. Mother was not present at the hearing on the motion to withdraw. Mother filed a *pro se* motion for a continuance to obtain counsel. That motion was denied. The trial court adjudicated J.G.R.

an abused or neglected child through the acts and/or omissions of mother.[1]

[¶ 4.] After additional attorneys appeared for mother, this matter was set for a dispositional hearing. Mother was eventually represented by attorneys Marty Jackley and Jason Smiley at the dispositional hearing. The trial court heard evidence concerning mother's prior decisions to leave J.G.R. with other caretakers for extended periods of time. Mother also failed to timely obtain a psychological evaluation or follow through with the recommendations. Mother was diagnosed with bipolar disorder, general anxiety disorder, and borderline personality traits. Mother took no steps to follow through with any treatment plan for her conditions. Additionally, mother refused to accept three different Department of Social Services (DSS) case service plans. Instead, she proposed her own plan to DSS to return the child or "see you later in federal court." The trial court terminated mother's parental rights.

## ANALYSIS

### ISSUE ONE

[¶ 5.] **Whether the trial court's decision to proceed with the adjudicatory hearing despite mother's lack of counsel was a violation of her statutory or constitutional rights.**

[¶ 6.] Mother appeared at the adjudicatory hearing without counsel. The trial court had previously allowed attorney Arendt to withdraw without appointing substitute counsel. At this adjudicatory hearing, mother persisted in her demands that she did not want to proceed without the benefit of counsel. Although the trial court had initially appointed her counsel,

---

1. Mother petitioned for intermediate appeal from the adjudicatory order. That petition was denied by this Court on March 21, 2003, appeal no. 22711.

that attorney was replaced by privately retained counsel. However, mother's privately retained attorney was allowed to withdraw before the adjudicatory phase without the requirement of substitute counsel by the trial court. Mother did not obtain counsel before the adjudicatory hearing. As a result, and despite her objections, mother proceeded at the adjudicatory hearing *pro se.*

[¶ 7.] The following statements were made to the trial court by mother:

> I don't—I don't know, but without right to counsel—you have noticed I am not very good at *courtroom procedure, and I* need to talk to counsel before I even—I probably should even shut up my mouth.
>
> I, you know, I am sorry, my daughter, when it comes to my daughter, I want the best and I want somebody to aggressively represent me.
>
> Objection. I am objecting to every witness, everything that the State calls. Every motion except for my motions for continuance and motion for change of venue, and motions for increased visitations. I request that they be tabled until I can obtain counsel.

[¶ 8.] The trial court proceeded in this matter. Its reasoning was summarized as follows:

> I appointed an attorney for you out of Pierre at your request, which I never do down here. So I went above and beyond what I would normally do to give you the representation that you wanted. And then, for some reason, that representation did not work out. I don't know what happened. I think that you then went and hired an attorney, so she was allowed to withdraw as counsel. So, the Court then went over and above

what it normally does to get you an attorney to represent you in this case. Essentially, the trial court determined that its obligation to ensure counsel for the adjudicatory hearing had ended.

[¶ 9.] SDCL 26–7A–31 specifically provides for a court appointed attorney for parents in an abuse and neglect proceeding. In addressing the right to effective assistance of counsel provided by this statute, this Court has adopted criminal procedures as a means to safeguard this right. *See Interests of A.D.,* 2004 SD 39, ¶ 10, 678 N.W.2d 594, 598 (adopting *Korth,* 2002 SD 101, 650 N.W.2d 528 procedures to abuse and neglect appeals because "the difference in the nature of the case, i.e. civil rather than criminal, makes no difference in the duties court-appointed counsel owes his or her client"). Therefore, it is instructive to consider how this situation could have been dealt with in a criminal proceeding.

[¶ 10.] On this record, it is clear that mother was having conflicts with the various attorneys employed to represent her. However, in the criminal context such problems, which can lead to delay in a proceeding, can be dealt with through either the trial court's denial of a motion to withdraw by counsel or a denial of a motion to substitute counsel made by the defendant. *See State v. Loftus,* 1997 SD 94, ¶ 14, 566 N.W.2d 825, 828 (affirming the trial court's denial of defense counsel's motion to withdraw after breakdown in attorney client relationship caused by defendant's failure to cooperate with the attorney); *State v. Irvine,* 1996 SD 43, ¶ 12, 547 N.W.2d 177, 181 (affirming trial court's denial of substitute counsel when it would protract the litigation and it was defendant who caused the disruption).[2] The trial

---

2. A trial court is not at the attorney's mercy when it comes to ensuring mother's right to counsel. SDCL 16–18–31 provides "[n]o attorney who has appeared of record in any

court did not use these procedures to deal with mother's revolving door of attorneys.

[¶ 11.] The criminal context also highlights the important consequence of proceeding *pro se* and what must be done in order to make such a decision.

At a minimum a defendant must be aware of the dangers and disadvantages of self-representation. On appeal, waiver of the right to counsel will not be found knowingly and intelligently made unless the trial court (1) warns the defendant of the dangers of self-representation or, (2) unless the record indicates circumstances from which this court can find the defendant was aware of the danger and made a knowing and intelligent waiver. While in some cases there may be a record showing a defendant is aware of the pitfalls of self-representation, an admonition from the trial court is preferred as it eliminates any doubt.

*State v. Bruch,* 1997 SD 74, ¶ 15, 565 N.W.2d 789, 792. Additionally, a trial court, even after obtaining a valid waiver of counsel, may appoint counsel to assist as a legal advisor. *In the Matter of John R. v. Jennifer A.,* 218 A.D.2d 694, 630 N.Y.S.2d 379, 381 (1995). However, the record must demonstrate that the party entitled to counsel "voluntarily, knowingly, and intelligently" waived that right. *State v. Christian,* 1999 SD 4, ¶ 23, 588 N.W.2d 881, 885. Without such a showing a defendant is presumed not to have waived the right to counsel, a right that "is not to be taken lightly." *State v. Raymond,* 1997 SD 59, ¶ 9, 563 N.W.2d 823, 825. Although mother had a right to proceed *pro se,* that is not a right she exercised willingly but fought against the entire way.

[¶ 12.] A trial court's consideration of a request for substitute counsel or a motion to withdraw can properly take into account the effect further delay in the proceeding will have upon the child. *In re Conley,* 216 Mich.App. 41, 549 N.W.2d 353, 356 (1996). In this instance, the trial court should have considered the effects of further delay in this proceeding as well as mother's statutory right to counsel when addressing attorney Arendt's motion to withdraw. By way of comparison, the facts of this case are closely analogous to *In re Baby Girl Elliott,* 2004 WL 1485858 (OhioApp.2004) (unpublished). In that case, mother's attorney also moved to withdraw because of a conflict with mother. *Id.* *8. Mother had a pattern of firing her attorneys and was on her third appointed attorney. *Id.* Moreover, there was a concern that this was a delaying tactic and it was necessary to resolve the matter for the sake of the child. *Id.* Therefore, the trial court denied the attorney's motion to withdraw. *Id.* In affirming this decision, the court noted that although mother had a right to counsel, she did not have a choice of counsel. *Id.* It was also significant that mother would not likely be able to obtain counsel before the hearing date. *Id.* These factors all supported the denial of a motion to withdraw, which allowed the matter to continue while still preserving mother's right to counsel. Although the denial of a motion to withdraw is not the only way to prevent delay and also preserve a parent's right to counsel, this case is illustrative of what the trial court could have done here.

civil or criminal proceeding shall be permitted to withdraw in any pending action except by order of the court after notice to all parties concerned." Additionally, "[a] lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." SDCL ch 16–18 App. Rule 1.16(c).

[¶ 13.] We therefore conclude that trial courts should be guided by the principles aptly stated in *J.A.H. v. Calhoun County DHR*, 846 So.2d 1093, 1095 (Ala. Civ.App.2002), wherein the court held that:

> In the criminal context, when a defendant has established that his appointed attorney should be relieved of representation because of a conflict of interest, the trial court must substitute new counsel. Although the basis of the constitutional right to counsel in criminal cases differs from the statutory right to counsel in termination-of-parental-rights cases, we see enough of a parallel between the two rights in this context to require a trial court that relieves an appointed attorney in a termination case of representation to appoint a substitute counsel so as to protect the parent's already exercised right to counsel.

The trial court erred in allowing the adjudicatory hearing to continue without ensuring the assistance of counsel as required by SDCL 26–7A–31. This could have been accomplished by denying counsel's motion to withdraw, denying a motion for substitute counsel, appointing new counsel, or obtaining a valid waiver.

## ISSUE TWO

[¶ 14.] **Whether the trial court abused its discretion in denying mother's motion for a continuance before the adjudicatory hearing.**

[¶ 15.] Mother alleges the trial court erred in denying her motion for a second continuance of the adjudicatory hearing so that she could obtain counsel. This Court has recognized that:

> The granting or refusal of a continuance is within the sound discretion of the circuit court, and its rulings will not be reversed absent a clear abuse of discretion. The term abuse of discretion refers to a discretion exercised to an end

or purpose not justified by, and clearly against, reason and evidence. The burden rests on mother to insure her availability at the time of the hearing as a dependency and neglect hearing can proceed without the presence of the parent if the interests of the parent are accommodated.

*Interest of E.D.J.*, 499 N.W.2d 130, 133 (S.D.1993) (internal citations omitted). Additionally:

> In deciding whether or not to grant a continuance, a trial court must consider: (1) whether the delay resulting from the continuance will be prejudicial to the opposing party; (2) whether the continuance motion was motivated by procrastination, bad planning, dilatory tactics or bad faith on the part of the moving party or his counsel; (3) the prejudice caused to the moving party by the trial court's refusal to grant the continuance; and, (4) whether there have been any prior continuances or delays.

*Evens v. Thompson*, 485 N.W.2d 591, 594 (S.D.1992) (internal citations omitted).

[¶ 16.] Here, further delay would have created a detrimental impact on the other parties to this proceeding. The State had three witnesses present that had traveled over 200 miles. Father was present and wanted to proceed. Child had been in the custody of DSS for more than seven months without adjudication. This hearing had been continued once before but there was no finding this was the result of bad faith or a dilatory tactic by mother. Under these circumstances, generally the trial court would not have abused its discretion in denying the motion for a continuance of the adjudicatory hearing. However, in light of the trial court's error under issue one, the grant of a continuance or some other curative remedy to provide counsel to mother should have been ordered by the trial court. Proceeding with-

out counsel or a valid waiver by mother was error justifying a continuance or additional methods to safeguard mother's right.

### ISSUE THREE

[¶ 17.] **Whether the error in failing to ensure representation by counsel at the adjudicatory phase requires reversal of the trial court's disposition when mother was represented by counsel at the dispositional hearing.**

[¶ 18.] An adjudicatory hearing is "a hearing to determine whether the allegations of a petition alleging that a child is abused or neglected are supported by clear and convincing evidence." SDCL 26–7A–1(2). *Interest of D.M.*, 2004 SD 34, ¶ 6, 677 N.W.2d 578, 580. Moreover, "the adjudicatory hearing looks to the past, *e.g.* whether there has been abuse or neglect, while the dispositional hearing looks to the child's future.... The focus of the dispositional hearing is the best interest of the child." *Interest of T.A.*, 2003 SD 56, ¶ 16, 663 N.W.2d 225, 232.

[¶ 19.] On rare occasions, this Court has applied harmless error analysis to the adjudicatory phase to affirm the termination of parental rights despite errors occurring below. *See Interest of C.V.*, 1998 SD 47, ¶ 11, 579 N.W.2d 17, 22. The question is "if reversing for an adjudicatory hearing will truly produce any rational possibility of a different result." *Id.* ¶ 9. With due regard for the facts of this case, and the overarching inquiry of what is in the best interests of this child, we conclude that the error was harmless in that it would not have changed the adjudication in this matter.

---

3. If this case were to be remanded it would be limited to the circumstances effecting the child at the time of the filing of the petition.

[¶ 20.] The adjudication phase "is brought on behalf of the child, not to punish the parents." *Id.* Here, mother clearly abused or neglected her child by abandoning her some 200 miles from her home at a feedlot. Even with the benefit of counsel, it is inconceivable that the child would not have been adjudicated abused or neglected.[3] *See Hughes v. Division of Family Services*, 836 A.2d 498, 512 (Del.2003) (holding that the absence of court appointed counsel during a dependency and neglect proceeding was harmless error). Furthermore, it is important for the purposes of this analysis to recognize that counsel was provided for the dispositional hearing in this matter, and thus mother was not left entirely to her own devices. *See Briscoe v. State of Arkansas*, 323 Ark. 4, 912 S.W.2d 425, 427 (1996) (finding harmless error when counsel had opportunity at the final hearing to present evidence mother left out when she improperly was required to proceed *pro se* during the initial phases). Although the trial court erred by not ensuring representation by counsel at the adjudicatory phase, that error was harmless because it did not taint the disposition of this matter, and remanding for an adjudicatory hearing would accomplish nothing.

### ISSUE FOUR

[¶ 21.] **Whether termination of parental rights was the least restrictive alternative.**

[¶ 22.] Mother contends that long term foster care would have been a less-restrictive alternative. Similar arguments have been rejected numerous times by this Court because long term foster care is generally not in a child's best interests. *Matter of S.W.*, 428 N.W.2d 521, 527

---

*Interest of C.V.*, 1998 SD 47, ¶ 11, n. 6, 579 N.W.2d at 22.

(S.D.1988). Children have a right to have a stable family environment. *Matter of S.A.H.*, 537 N.W.2d 1, 6 (S.D.1995). Additionally, "the least restrictive alternative is viewed from the child's point of view." *Id.* "Children have a right to be a part of a family and should not be required to wait for parents to acquire parenting skills that may never develop." *Id.* The testimony at trial established that mother made little, if any, progress in improving her parenting skills. Termination of parental rights was the least restrictive alternative when considering the best interests of the child.

### ISSUE FIVE

[¶ 23.] **Whether the trial court erred in determining reasonable efforts to reunite the family had been made.**

[¶ 24.] DSS must exercise reasonable efforts to return children to their parents. SDCL 26–8A–21. Mother argues that she completed a substantial portion of the goals set for her by DSS. Mother did complete parenting classes and attend most of her visits with the child, except for two months of no visitation whatsoever. However, she failed to cooperate with DSS, keep them informed of her whereabouts, sign her case service plans, and, most importantly, refused to follow the recommendations of her psychiatric evaluation. Mother made no attempts to complete her necessary treatments or counseling and DSS's efforts toward reunification were frustrated almost every step of the way by mother's actions. The trial court did not err in determining that reasonable, but unsuccessful, efforts were made.

[¶ 25.] Affirmed.

[¶ 26.] SABERS, Justice, concurs.

[¶ 27.] GILBERTSON, Chief Justice and MEIERHENRY, Justice, concur in result.

[¶ 28.] ZINTER, Justice, concurs specially.

GILBERTSON, Chief Justice (concurring in result).

[¶ 29.] I concur with the Court that the lack of representation by court-appointed counsel at the adjudicatory hearing under the facts of this case does not require reversal, but for different reasons. Mother's constitutional and statutory rights under SDCL 26–7A–31 were adequately provided to her without court appointment of additional counsel at the adjudicatory hearing. I would also hold that the trial court did not abuse its discretion in denying Mother's motion for a continuance under Issue 2.

[¶ 30.] I agree with the Court that it would have been sufficient for the trial court to deny counsel's motion to withdraw, deny Mother's motion for substitute counsel, or obtain a valid waiver as a means of further safeguarding Mother's rights. I do not agree that the trial court was required to appoint substitute counsel at the adjudicatory phase under the facts of this case, as Mother's right to counsel had been adequately protected throughout the proceedings.

[¶ 31.] The facts of this case are lengthy and complex as it pertains to the revolving door of attorneys retained by Mother for the adjudicatory abuse and neglect proceedings. On May 13, 2003, attorney Rose Ann Wendell was court appointed to represent Mother and the case was scheduled for adjudicatory hearing on July 23, 2002. By July 17, 2002, attorney Stanley E. Whiting entered an appearance on behalf of Mother after she privately retained his services. A continuance of the adjudicatory hearing was granted. On

September 16, 2002, Whiting requested leave to withdraw as counsel per Mother's request.

[¶ 32.] A hearing was set for October 10, 2002 to schedule a trial date on the petition to adjudicate Child as abused and neglected. Mother privately retained attorney Al Arendt who represented her at the scheduling hearing on October 10, 2002, and the adjudicatory hearing was scheduled for December 3, 2002. Less than one week later, Arendt filed a motion to withdraw as counsel for Mother on grounds of "conflict between the attorney and client relative to compliance with Court Orders." The order allowing Arendt to withdraw provided that the adjudicatory trial scheduled for December 3, 2002, would proceed as scheduled.

[¶ 33.] After changing attorneys three times in seven months, Mother proceeded pro se. Mother then filed pro se motions for a change of venue, for a continuance, for an immediate hearing on the motions on change of venue and continuance, for an independent psychological examination of Child, for reasonable visitation, and for a subpoena to depose Child's therapist Emily Williams.

[¶ 34.] At the adjudicatory hearing on December 3, 2002, Mother appeared pro se. Mother attempted to explain why she had been unable to hire private counsel. She then requested court appointed counsel and a continuance in order to retain counsel. Mother's requests were denied. Mother's intermediate appeal of the trial adjudicating Child as abused and neglected, filed *pro se*, was denied by this Court on February 6, 2003.

[¶ 35.] There is no absolute constitutional right to court appointed counsel in the absence of a potential deprivation of physical liberty. *Lassiter v. Dep't. of Soc. Servs. of Durham County, North Carolina*, 452 U.S. 18, 25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640, 648 (1981) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). The Due Process Clause of the Fourteenth Amendment does not require the appointment of counsel in every parental termination proceeding. *Lassiter*, 452 U.S. at 33, 101 S.Ct. at 2162, 68 L.Ed.2d at 654. Instead, the appropriate due process evaluation requires the weighing of three factors, the private interests at stake, the government's interest, and the risk that the procedures will lead to erroneous decisions, against a "right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." *Id.* at 27, 101 S.Ct. 2153 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976)). The United States Supreme Court has noted a majority of states utilized a higher standard by statute than that required by the Constitution and that such statutes are "enlightened and wise," but not mandatory. *Id.* at 34, 101 S.Ct. 2153.

[¶ 36.] South Dakota is counted among those "enlightened and wise" states. SDCL 26-7A-31 "specifically provides for a court appointed attorney for parents in an abuse and neglect proceeding." *Supra* ¶ 9. However, the statutory right to counsel in such proceedings is not absolute. SDCL 26-7A-31. The appointment is conditioned on two factors. First the indigent party must request the court appointment, and second the court must find "the party to be without sufficient financial means to employ an attorney." [4] *Id.*

---

4. SDCL 26-7A-31 provides in relevant part:
 If the child or the child's parents, guardian, or other custodian requests an attorney in proceedings under this chapter or chapter

 26-8A, 26-8B, or 26-8C and if the court finds the party to be without sufficient financial means to employ an attorney, the

[¶ 37.] This Court has adopted the procedural safeguards utilized in criminal proceedings to ensure effective assistance of counsel in abuse and neglect proceedings.[5] *See Interests of A.D.*, 2004 SD 39, ¶ 10, 678 N.W.2d 594, 598. Despite the diligence a trial court must use in criminal cases when determining whether a valid waiver of the right to counsel has been made, a defendant will not be indulged every time he requests a new court appointed attorney. *State v. Bruch,* 1997 SD 74, ¶ 18, 565 N.W.2d 789, 793 (quoting *Berry v. Lockhart,* 873 F.2d 1168, 1171 (8th Cir.1989)). A defendant will not be permitted to engage in dilatory tactics as a means of manipulating the right to counsel to delay or disrupt the trial. *Id.* (citing *United States v. White,* 529 F.2d 1390, 1393 (8th Cir.1976)). These standards should apply equally to parental rights terminations as well as criminal prosecutions given our adoption of criminal procedural safeguards to ensure effective assistance of counsel in such adjudicatory proceedings. *See Interests of A.D.*, 2004 SD 39, ¶ 10, 678 N.W.2d at 598.

ome jurisdictions go so far as to deny the statutory right of counsel for parental rights termination proceedings when the indigent parent has received adequate and timely notice of the right to counsel, yet fails to request such counsel until the day of trial. *Interest of B——— M———P———,* 704 S.W.2d 237, 248 (Mo.Ct. App.1986). Others interpret the failure of the parent to request such representation via the statutorily prescribed method prior to trial date to be a valid waiver of the right to counsel. *Interest of KMM,* 957

P.2d 296, 298 (Wyo.1998) (fathers failure to file the appropriate motion for court appointed counsel was deliberate decision to proceed pro se despite initial request by letter, as father filed several other motions that indicated he understood the procedural requirement). Other jurisdictions view the repeated discharge of attorneys, both court-appointed and privately retained, as a waiver of the statutory right to counsel. *In re Adoption of Olivia,* 53 Mass.App.Ct. 670, 761 N.E.2d 536, 542 (2002) (holding reasons advanced by father in support of his motion for substitution of appointed counsel in proceedings for termination of his parental rights did not constitute good cause for removal of appointed counsel); *Keen v. Marion County Dept. of Public Welfare,* 523 N.E.2d 452, 456 (Ind.Ct.App. 1988) (holding no violation of statutory right to counsel of mother who was denied a second court appointed attorney after using court appointed counsel for four years, being granted numerous continuances, electing to use private counsel, and then failing to hire counsel prior to trial date).

[¶ 38.] Our statutory scheme for termination of parental rights is grounded upon the best interests of the child. SDCL 26–7A–5; *Interest of E.D.J.*, 499 N.W.2d 130, 135 (S.D.1993). We have repeatedly held that we will not force the child to wait for his parents to acquire parenting skills that may never develop. *In re J.Y.,* 502 N.W.2d 860, 862 (citing *Interest of A.D.,* 416 N.W.2d at 268). Should we now hold that we will force a child to wait for his

court shall appoint an attorney for the party.

5. A criminal defendant has the constitutional right to counsel or to self-representation. *State v. Van Sickle,* 411 N.W.2d 665, 666 (S.D.1987) (citing *Faretta v. California,* 422

U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The right to counsel may be waived, but only through a knowing, voluntary and intelligent waiver. *Id.* The trial court must engage in specific procedure in order to ascertain the defendant has made a knowing, voluntary and intelligent waiver. *Id.*

parents to acquire the counsel of their choice?

[¶ 39.] I find the Court's reliance on *J.A.H. v. Calhoun County DHR*, 846 So.2d 1093, 1095 (Ala.Civ.App.2002) for the proposition that a trial court must appoint counsel to a parent who has formerly repeatedly fired such counsel up until the day of the dispositional hearing to be of great concern. That case is materially distinguishable from the facts of the current case. In *J.A.H.*, the father had requested court appointed counsel at the initial phase of the proceedings and had been found financially qualified for such representation. *Id.* at 1094. However, due to a conflict of interest court appointed counsel was allowed to withdraw and no replacement counsel was appointed by the trial court. *Id.* Father never rejected or discharged his court appointed attorney, nor did he waive his statutory right to counsel by his actions. *Id.*

[¶ 40.] In the present case, Mother did not request court appointed substitute counsel until the day of the trial. Up to that point Mother had given no indication that she would avail herself of an appointment, and had been hiring and firing privately retained counsel throughout the seven months of proceedings and hearings. Additionally, Mother filed six pro se motions prior to her request for court appointed counsel. Mother's actions were not on par with the father in *J.A.H.* such that it would be "unduly burdensome and overly technical to require [Mother] to repeatedly request the appointment of counsel." *See J.A.H.*, 846 So.2d at 1095. Mother's multiple requests for court appointed counsel all occurred on the day of the trial, and all were in my opinion sufficiently untimely and served as a valid waiver of her right to counsel.

[¶ 41.] A child should not be forced to dangle in legal limbo while this revolving door process of attorney after attorney repeats itself solely by the acts of Mother. Neither should the taxpayers of this State be forced to fund an endless stream of attorneys who, for whatever subjective reason, fail to pass muster with a parent facing an abuse and neglect proceeding. SDCL 26–7A–31 contemplates as much as it provides for the appointment of "an attorney" not "numerous attorneys" of the parent's choosing.

[¶ 42.] As no error was committed by the trial court under Issues 1 and 3, in my opinion the trial court did not abuse its discretion in denying Mother's motion for a continuance before the adjudicatory hearing in Issue 2. I concur with the Court's holdings in Issues 4 and 5.

[¶ 43.] MEIERHENRY, Justice, joins this special writing.

ZINTER, Justice (concurring specially).

[¶ 44.] I join the opinion of the Court because this is not just a case about the right to *court-appointed* counsel, it is a case about the denial of *all* counsel (appointed and retained) to represent Mother at an adjudicatory hearing.

[¶ 45.] Although one may fairly debate whether Mother made an effective request for court-appointed counsel on or before the December 3 adjudicatory hearing, the record is very clear that Mother did make three requests to *retain* new counsel. Moreover, all three requests were made shortly after her last retained lawyer withdrew, but two to three weeks before the adjudicatory hearing. Specifically, on November 13, 2002, the day before Mother was served with formal notice of attorney Arendt's withdrawal, she made a motion for change of venue "so that *she* [could] obtain legal counsel." (Emphasis added.) The affidavit supporting that motion explained that Mother had been unable to

obtain replacement counsel in the rural Winner, South Dakota area because of conflicts of interests. Then, on November 23, 2002, Mother raised the issue again, moving to continue the December 3 adjudicatory hearing so that *she* could *"retain legal counsel."* (Emphasis added.) Finally, on November 26, 2002, apparently because the preceding motions had not been heard, Mother filed a motion for an immediate hearing. She indicated that she sought an immediate pretrial ruling on these motions because she desired to take an intermediate appeal if her request to retain counsel was denied.

[¶ 46.] Because no pretrial disposition of these motions occurred, when Mother appeared on December 3, she reasserted her objections to proceeding without counsel to represent her.[6] Mother also explained her efforts to find replacement counsel.[7] The trial court overruled the motions and conducted the adjudicatory hearing without counsel present. Thus, the record reflects that during the approximately one month period between Arendt's withdrawal and the adjudicatory hearing, Mother made three motions seeking the opportunity to retain counsel for the hearing. In my view, these requests do not support the concurrence in result's conclusion that Mother's request for counsel was sufficiently untimely to serve as a valid waiver of her right to all counsel.

[¶ 47.] On the contrary, in a similar criminal case we stated that when a defendant discharges retained counsel and appears at trial requesting a continuance to obtain their own counsel, a waiver may not be necessarily presumed. *State v. Bruch*, 1997 SD 74, ¶ 20, 565 N.W.2d 789, 793. Instead, the trial court should, at the very least, warn the defendant of the dangers of self-representation. *Id.* ¶ 15. Additionally, "the trial court has the responsibility of inquiring into the circumstances surrounding potential forfeiture or waiver [of counsel] and ensuring that a defendant's decision is knowing and intelligent." *Id.* ¶ 20 (citations omitted). Thus, we previously held that unless the defendant is advised of the hazards of self-representation, a trial court may not allow retained counsel to withdraw and fail to grant a request for a continuance, assuming that the defendant has waived his right to counsel and will represent himself pro se. *Id.* ¶ 17.

[¶ 48.] I also join the Court's analysis because the trial court expressly recognized that the motion for continuance was properly filed in advance of the hearing under SDCL 15–11–6,[8] and that there

---

6. Mother's oral objections and argument apparently included some factual allegations. Consequently, the trial court attempted to administer an oath before it would permit Mother to argue her motions. In response, Mother objected, asking the court "to table" the oath "until I have an opportunity to consult with counsel. I don't know if I should be giving testimony or not." The trial court declined that request. Mother then relented and she was sworn as a witness to argue her motions.

7. Mother indicated that she had contacted two lawyers in Winner and lawyers in the neighboring communities of Murdo, Chamberlain, and Gregory, as well as Sioux Falls and Rapid City.

8. SDCL 15–11–6 provides:

All applications for continuance must be made, by motion, not less than ten calendar days prior to the day set for commencement of the trial, unless the cause for continuance shall have arisen ·or come to the knowledge of the party subsequent to that time, in which case the motion shall be made as soon as practicable. All such motions shall be in writing and accompanied by affidavits in support of the motion, which affidavits shall set forth with particularity the grounds. and cause for such motion as well as the efforts of the party or the party's attorney to avoid such delay. Upon receipt of such a motion, the court shall schedule a hearing, which may be by telephone conference, and shall decide the motion without delay in order to avoid trial

were good reasons for the delays caused by Mother. Although the transcript reflects significant difficulties in dealing with Mother as a pro se litigant, the trial court indicated that the delays were "legitimate" because of a change of counsel and complications associated with Mother's pregnancy. It is also significant that the trial court expressed concerns about Mother's competency to proceed as early as the advisory hearing on July 11, 2002.

[¶ 49.] Thus, this is not a case where the trial court entered findings that the objecting party was using dilatory tactics to manipulate the court.[9] Although the trial court was properly concerned with prejudice to the child from further delays, the State itself concedes on appeal there was no bad faith on Mother's part, and that the reasons for the previous continuances "appear to have been bona fide."

[¶ 50.] Considering these concessions and Mother's three pretrial requests to retain counsel, I concur.

delay awaiting such decision. The adverse party may be heard by affidavits or by argument presented, filed, and served at the time of the hearing.

9. "Of course, this is not to say that every time a defendant requests a new lawyer, he should be indulged. These requests will sometimes, perhaps often, be dilatory tactics. A defendant has no right to manipulate his right to counsel in order to delay or disrupt the trial." *Bruch*, 1997 SD 74, ¶ 18, 565 N.W.2d at 793 (quoting *Berry v. Lockhart*, 873 F.2d 1168, 1171 (8thCir.1989)).