#30391-a-MES
**2024 S.D. 72**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                Plaintiff and Appellee,

    v.

MATTHEW P. FULLER,                Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT L. SPEARS
Judge

* * * *

DERRICK JOHNSON
Springfield, South Dakota                Attorney for defendant
and appellant.


MARTY J. JACKLEY
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                Attorneys for plaintiff
and appellee.

* * * *

CONSIDERED ON BRIEFS
MARCH 19, 2024
OPINION FILED **11/26/24**

#30391

SALTER, Justice

[¶1.]        Pursuant to his guilty plea, Matthew Fuller was convicted of one felony count of possessing more than two ounces of marijuana but less than one-half pound. The circuit court suspended the execution of a prison sentence and placed Fuller on supervised probation. After the second of two post-sentencing arrests, the court ordered Fuller held in jail pending the resolution of the State's petition to revoke his probation. The court appointed two attorneys in succession to assist Fuller in the probation revocation proceeding. Each attorney moved to withdraw, and the court granted both requests. The court did not appoint substitute counsel after allowing the second attorney's withdrawal.  The court conducted the revocation hearing with Fuller acting pro se after denying his request for a continuance and for the appointment of counsel. After finding that Fuller violated the terms of his probation, the court executed the previously suspended two-year prison sentence. With the assistance of appointed appellate counsel, Fuller appeals. We affirm.

**Factual and Procedural Background**

[¶2.]        Following a traffic stop in the Codington County community of Henry on February 4, 2021, Matthew Fuller was charged in a superseding indictment with one count of possessing one-half pound but less than one pound of marijuana with the intent to distribute (a Class 4 felony) and one count of possessing one-half pound but less than one pound of marijuana (a Class 5 felony). Though he was initially held in jail, Fuller was released under bond conditions after posting a

-1-

$2,500 cash bond. The circuit court appointed a series of attorneys to represent Fuller, including Terry Sutton, Timothy Cummings, and Scott Bratland.

[¶3.] Sutton represented Fuller until January 2022 when he apparently withdrew, though the record does not contain a motion to withdraw or corresponding order. Cummings was then appointed, and he served as Fuller's attorney through an April 2022 suppression hearing, after which he moved to withdraw. The circuit court appointed Bratland after that, and he represented Fuller through the June 2022 change of plea and sentencing hearing after which he withdrew.

[¶4.] At the April 20, 2022 suppression hearing, the circuit court became aware that Fuller's girlfriend was recording the hearing without authorization using an iPad device. The court ordered her and the others in the courtroom to turn over their phones and electronic devices. Fuller's girlfriend and the others in attendance complied, but Fuller refused to turn over his phone. The court ordered him removed from the courtroom and determined that his conduct was contemptuous. Deputies apprehended Fuller after he left the courtroom and detained him in jail.

[¶5.] The following day, April 21, the State moved to revoke Fuller's bond based upon his noncompliant conduct during the suppression hearing. The circuit court signed an arrest warrant the next day, which set a cash bond of $3,000. Fuller's father paid the bond amount several days later, and Fuller was released on April 26.

[¶6.]        The contempt finding and his related confinement became a focal point for Fuller. Through numerous pro se letters and filings, Fuller challenged the circuit court's decision and the jail's authority to hold him. Fuller also began to accuse the court of partiality and bias.

[¶7.]        Although there are few details contained in the record, the contempt finding also prompted a misdemeanor charge that was assigned a magistrate court case number by the Codington County Clerk of Court. Fuller alleges the circuit court acted on its alleged bias when it signed an arrest warrant in the contempt case.

[¶8.]        The drug possession case was eventually resolved on June 22, 2022, through a plea agreement with the State under which Fuller pled guilty to possessing more than two ounces but less than one-half pound of marijuana (a Class 6 felony). The State agreed to dismiss the two more serious felony charges and also agreed to dismiss the charges in two other cases, including the misdemeanor case relating to the contempt finding.

[¶9.]        During a combined change of plea and sentencing hearing in June 2022, Fuller entered a knowing and voluntary guilty plea to the new felony possession of marijuana charge. The circuit court obtained a factual basis for the plea and imposed a suspended two-year prison sentence, conditioned upon Fuller's satisfactory completion of a term of supervised probation. Among Fuller's probation conditions was the obligation to obey all state, federal, tribal, and municipal laws.

[¶10.]        Fuller was arrested following traffic stops on November 23, 2022, and December 5, 2022. Both arrests resulted in drug-related charges and two new

criminal cases with allegations concerning unlawful marijuana possession, as well as use and possession of methamphetamine. The November set of charges also included an allegation that Fuller committed the offense of aggravated assault by choking his girlfriend.

[¶11.] These arrests prompted a violation report from Fuller's court services officer (CSO) who exercised his authority to detain Fuller after the December 5 arrest. *See* SDCL 23A-27-21.2 (authorizing a CSO to issue a detainer for a probationer lasting up to 48 hours "for the purpose of obtaining a warrant, revocation, bond hearing, or court order"). Before the expiration of the detainer, the circuit court ordered Fuller held without bond in an email. However, the email was not initially filed with the clerk, and Fuller claimed that he should have been released after 48 hours.

[¶12.] The circuit court addressed Fuller's detention at a December 9 hearing during which it read the contents of the email that was later filed. Fuller was represented at the hearing by newly appointed counsel, Don McCarty, who presented his client's arguments for bond, which the court denied. Fuller appeared through a live video link and was frequently disruptive during the hearing. He insisted on addressing the court personally concerning the lawfulness of his detention, which the court allowed before again clarifying that it acted prior to the expiration of the CSO detainer.

[¶13.] In early January 2023, Fuller filed a series of pro se motions seeking new counsel, the production of certain documents, and a bond hearing "before an unbiased judge." The presiding judge for the Third Judicial Circuit denied the

request for a new judge, and McCarty moved to withdraw, citing "an irremediable and complete breakdown in the attorney/client relationship[.]" McCarty was allowed to withdraw, and the court appointed attorney Manuel deCastro.

[¶14.] Fuller continued to file pro se motions and writs seeking bond, release from confinement, and the circuit court's recusal.[1] Fuller also sought withdrawal of his earlier guilty plea, repeating his theory that the circuit court demonstrated bias in connection with the contempt finding and confinement prior to the resolution of the underlying case. In addition, Fuller sought to hold his probation violation proceeding in abeyance pending the resolution of the two criminal cases resulting from the November and December 2022 arrests. Fuller noted that the court indicated a willingness to do so in its earlier communication with McCarty.

[¶15.] Fuller began to object to deCastro's representation in February. In a pro se writ of mandamus petition, Fuller expressed his intent to represent himself, with deCastro serving in an advisory, "second seat" role. DeCastro filed a motion to withdraw in May, describing, as McCarty had, an "irremediable" breakdown in the attorney/client relationship.

[¶16.] The circuit court considered the motion to withdraw at a May 17 hearing. Fuller agreed that deCastro should be allowed to withdraw, but stated, "I do not want to represent myself." The court allowed deCastro to withdraw and addressed Fuller's request for counsel:

> Let me ask you this, I appointed, I believe, in my best professional judgment, four of the best criminal defense

---

1. Fuller filed a petition for habeas corpus with this Court, which we considered and denied in a January 6, 2023 order.

attorneys in the region and you had problems with every one of them. So do you have an attorney in mind?

[¶17.] Fuller identified a particular Aberdeen attorney and indicated he was making an effort to retain him with financial assistance from his family. Relying upon information not contained in the record, both the State and the circuit court expressed skepticism that the Aberdeen attorney would agree to represent Fuller. Ultimately, the court did not appoint any attorney for Fuller, and it stated that it would conduct the revocation hearing the following week regardless of whether Fuller had retained counsel.

[¶18.] Fuller did not retain counsel, and he proceeded pro se at a May 24 revocation hearing. The hearing featured testimony from Fuller's CSO, who testified he lost contact with Fuller in October 2022, and from law enforcement officers involved in Fuller's November and December 2022 arrests. The circuit court denied a number of preliminary pro se motions Fuller filed, and, after Fuller presented a new application for a court-appointed attorney, the court stated specifically, "I am not going to appoint another attorney for you." In response to Fuller's motion to compel the State to amend its petition to revoke to describe more specific evidence, the court concluded that the petition was sufficient and also confirmed that Fuller received all of the discovery from the State.

[¶19.] Fuller's cross-examination of the law enforcement witnesses was punctuated by argument and his own version of facts, and the circuit court frequently redirected Fuller and sustained related objections from the State. Overall, Fuller's efforts appeared to be directed at minimizing the weight of the marijuana seized during the two traffic stops and also liability for possessing it. As

to the methamphetamine, he challenged the testimony relating to possession and use by suggesting a compromised chain of custody for the seized contraband, which was not itself admitted. Fuller also claimed the evidence of constructive possession was insufficient to sustain a finding. Fuller called one witness, his girlfriend, who testified he had not assaulted her.

[¶20.] The circuit court found that Fuller violated the condition of his probation that required him to obey all laws, specifically noting that a urinalysis obtained after his November 23 arrest tested positive for methamphetamine. As an additional basis raised by the evidence, the court also found that Fuller violated his probation because he had not maintained contact with his CSO. The court ordered the execution of Fuller's suspended two-year prison sentence and determined it would not grant Fuller credit for the 170 days he had been confined pending the resolution of the revocation proceeding.

[¶21.] When Fuller objected to this latter ruling, the court stated that it was a matter of its discretion to award time-served credit in instances where a person is held without bond. In connection with this discussion, the court explained its justification for holding Fuller without bond by providing its assessment, as it had at an earlier hearing, that Fuller was a "danger to this community."

[¶22.] With the assistance of appointed appellate counsel, Fuller appeals, challenging the circuit court's decision to deny his request for counsel and to not give credit for the time served awaiting the revocation hearing. He also argues that

the circuit court was biased against him in violation of the Canons of Judicial

Conduct, and that the revocation petition and proof violated due process.[2]

### Analysis and Decision[3]

#### *Appointment of counsel for a probation revocation hearing*

[¶23.]     "[T]here are critical differences between criminal trials and probation

or parole revocation hearings[.]" *Gagnon v. Scarpelli*, 411 U.S. 778, 788–89, 93 S.

Ct. 1756, 1763, 36 L. Ed. 2d 656 (1973). "Revocation deprives an individual, not of

the absolute liberty to which every citizen is entitled, but only of the conditional

liberty properly dependent on observance of special parole restrictions." *Morrissey*

*v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972).

[¶24.]     A probationer facing a revocation proceeding is entitled to certain due

process protections, as we explain below, but the United States Supreme Court has

noted that its "precedents have sought to preserve the flexible, informal nature of

the revocation hearing, which does not require the full panoply of procedural

safeguards associated with a criminal trial." *Black v. Romano*, 471 U.S. 606, 613,

---

2.     Through counsel, Fuller attempted to appeal the circuit court's email denial
       of a motion to stay proceedings and for bond pending appeal. We dismissed
       the appeal by order because it was not "a signed, attested, filed order
       pursuant to SDCL 15-26A-6."

3.     In *State v. Dietz*, 2024 S.D. 70, -- N.W.3d.--, also issued today, we resolved an
       unsettled question concerning the source of our appellate jurisdiction to
       review a probationer's challenge to a final order in a probation revocation
       proceeding. We determined in *Dietz* that probation revocation proceedings
       are special proceedings and sourced our jurisdiction to SDCL 15-26A-3(4)
       which allows an appeal from "[a]ny final order affecting a substantial right,
       made in special proceedings[.]"

105 S. Ct. 2254, 2258, 85 L. Ed. 2d 636 (1985) (citing *Gagnon*, 411 U.S. at 787–90, 93 S. Ct. at 1762–64 and *Morrissey*, 408 U.S. at 489–90, 92 S. Ct. at 2604–05).

[¶25.]     As a result, the Supreme Court has "declined to hold that indigent probationers have, per se, a right to counsel at revocation hearings, and instead left the decision whether counsel should be appointed to be made on a case-by-case basis." *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 26, 101 S. Ct. 2153, 2159, 68 L. Ed. 2d 640 (1981) (discussing *Gagnon*). In South Dakota, however, our Legislature has enacted a statutory requirement for counsel in all probation and parole revocation proceedings. SDCL 23A-40-6. Individuals need only show that they are indigent and request the assistance of counsel. *Id.*

[¶26.]     However, unlike the deprivation of the constitutional right to counsel at trial, the deprivation of the statutory right to counsel at a probation revocation hearing is not included among the narrow list of six structural errors which are not subject to harmlessness review.[4] *See Guthmiller v. Weber*, 2011 S.D. 62, ¶ 16, 804 N.W.2d 400, 406 (listing the six structural errors). Therefore, a defendant deprived of the statutory right to counsel at a probation revocation hearing must prove the deprivation was prejudicial. In other words, a defendant must prove "a reasonable

---

4.     Fuller asserts that he had a constitutional right to have counsel present at the revocation hearing, though he does not develop this argument beyond citing our decision in *State v. Christian*, 1999 S.D. 4, 588 N.W.2d 881. In *Christian*, however, we recognized, as we have here, that there is no universal constitutional right to counsel at a probation revocation hearing. *Id.* ¶ 15, 588 N.W.2d at 883. As a result, the particular due process violation we ultimately identified was limited to the facts of the case which involved insufficient notice of the alleged probation violation—a fact not present here, as we explain below. *Id.* ¶¶ 22–24, 588 N.W.2d at 885. Accordingly, we will evaluate Fuller's denial of counsel argument as a statutory claim, not a constitutional one.

probability that, but for the error, the result of the proceeding would have been different." *State v. Carter*, 2023 S.D. 67, ¶ 26, 1 N.W.3d 674, 686.

[¶27.] Here, there is no dispute that Fuller is indigent, and it is equally clear that he requested an attorney. The circuit court initially appointed two experienced attorneys to assist Fuller, but the court granted their motions to dismiss after each reported serious deterioration of the attorney/client relationship.[5] For example, at the May 17 hearing, held one week before the revocation hearing, deCastro reported to the court:

> [Fuller] informed my office that he won't speak to me nor meet with me.
>
> And since that time, it's just been some letters instructing me to file, what I consider to be, frivolous at best, material which I refused to file. But just today, it's more of the same, just yelling at me.

[¶28.] The circuit court's letter, dated May 17, stated, "Although Mr. Fuller has the right to be represented by a lawyer if he wishes, he does not have the right to instruct counsel to file frivolous motions, refuse to listen or follow his attorney's

---

5. Fuller asserts that we should review the substitution of counsel for an abuse of discretion. In his view, the circuit court abused its discretion by not holding separate hearings to determine the necessity to allow withdrawal for either McCarty or deCastro. Though it may well have been advisable for the court to conduct a hearing to clarify the role and responsibilities of a defense attorney, Fuller is not actually challenging the decisions to allow McCarty's and deCastro's withdrawals; he agreed to it in both instances. The only issue presented in this appeal is the court's refusal to appoint another attorney for Fuller when he did not have one, despite his request and indigency. The court's obligation to do so is set out in SDCL 23A-40-6, and the claim that the court did not comply with this statutory command is a legal issue we review de novo. *See State v. Falkenberg*, 2021 S.D. 59, ¶ 55, 965 N.W.2d 580, 596 (holding that whether a court complies with a statutory standard is a question of law reviewed de novo).

candid, independent professional advice, or refuse to assist counsel in the proper defense of his case." The court was correct, at least insofar as it noted that Fuller could not compel his attorney to file frivolous motions, but the court's response to evidence of Fuller's querulous behavior was erroneous.

[¶29.] The circuit court determined that Fuller was delaying the revocation proceedings and stated it would not appoint another attorney. Fuller could act on his plan to retain an attorney with the financial assistance of his family or not, but, either way, the court indicated that the revocation hearing would be held the following week on May 24.

[¶30.] When he appeared on May 24 without an attorney, Fuller requested court-appointed counsel and a continuance.[6] The circuit court denied both motions, and as to the denial-of-counsel ruling, the State concedes the court's violation of SDCL 23A-40-6, relying in part upon *In re J.G.R.*, 2004 S.D. 131, 691 N.W.2d 586.

[¶31.] Although the statutory right to counsel we confronted in *J.G.R.* concerned representation for a mother in an abuse and neglect action involving her child, we noted that we had previously "adopted criminal procedures as a means to safeguard this right." *J.G.R.*, 2004 S.D. 131, ¶ 9, 691 N.W.2d at 589 (citing cases). The mother had been represented by a number of attorneys, appointed and retained, all of whom had withdrawn with the circuit court's permission. *Id.* ¶ 3, 691 N.W.2d at 588. The court grew concerned that the mother was acting to delay

---

6. The continuance request was based upon Fuller's statements that he was suffering from health-related concerns.

the action and refused to appoint counsel for an adjudicatory hearing, despite the mother's indigency and request. *See id.*

[¶32.] We acknowledged the validity of the circuit court's concern regarding delay, but we cited procedures used "in the criminal context" to better "deal with mother's revolving door of attorneys." *Id.* ¶ 10, 691 N.W.2d at 589–90. In particular, the court could have denied "a motion to withdraw by counsel" or denied "a motion to substitute counsel made by the defendant." *Id.* at 589. By doing neither, the court was unable to effectively address its unnecessary-delay concern while still meeting its statutory obligation to appoint counsel. *Id.* ¶ 13, 691 N.W.2d at 591.

[¶33.] The same is true here. Fuller qualified for appointed counsel and requested it. We note that the record contains several statements from Fuller in which he expressed a desire to represent himself with the assistance of standby counsel. It is unclear if this was Fuller's intent at the time of the revocation hearing. Regardless, the circuit court did not pursue this option at any point, though it could have by inquiring into Fuller's willingness to knowingly and voluntarily waive his statutory right to counsel, advising him of the risks of self-representation, and appointing standby counsel.

[¶34.] However, Fuller does not allege he was prejudiced by the deprivation of counsel at the revocation hearing, nor does the record support that he was. Because "[a] probation revocation proceeding is not a criminal prosecution[,]" a violation does not need to be established beyond a reasonable doubt. *State v. Divan*, 2006 S.D. 105, ¶ 7, 724 N.W.2d 865, 869. Instead, a court considering a probation

revocation petition "has discretion to determine if it is reasonably satisfied that a violation has occurred[.]" *State v. Kari*, 2021 S.D. 33, ¶ 30, 960 N.W.2d 614, 621.

[¶35.]     Here, there is overwhelming evidence to support the circuit court's finding of a probation violation under the relatively modest reasonable satisfaction of burden of proof. Leaving aside the evidence that Fuller failed to maintain contact with his CSO and even the evidence of his marijuana possession, there is undisputed evidence that he used methamphetamine.

[¶36.]     Officer Alex Hansen, a K-9 officer with the Watertown Police Department, testified that he responded with his drug-detecting canine to the November 23 traffic stop involving Fuller. While using his canine to determine the presence of the scent of illegal drugs, the canine indicated to Fuller's vehicle. A subsequent search revealed a glass pipe containing white residue and a used needle, both of which tested presumptively positive for methamphetamine. Fuller was also given a urinalysis, which likewise, resulted in a presumptively positive test for methamphetamine. These results were later confirmed by laboratory analysis.

[¶37.]     In light of this evidence and the lack of any argument by Fuller that the violation of his statutory right to counsel impacted the result of his revocation proceeding, Fuller has not established prejudice resulting from what we readily conclude was an erroneous failure to appoint counsel.

**Credit for time served without bond pending a revocation hearing**

[¶38.]     "Defendants in South Dakota do not have a statutory right to credit for time served." *State v. Ainsworth*, 2016 S.D. 40, ¶ 5, 879 N.W.2d 762, 764 (citing

*State v. Sorenson*, 2000 S.D. 127, ¶ 14, 617 N.W.2d 146, 149). However, the Due Process Clause of the Fourteenth Amendment requires credit for indigent defendants "where incarceration results from a defendant's financial inability and failure to post bond[.]" *Sorenson*, 2000 S.D. 127, ¶ 15, 617 N.W.2d at 149; *see also State v. Green*, 524 N.W.2d 613, 614 (S.D. 1994).[7]

[¶39.] But this due process exception is limited to instances in which a defendant's indigency prevents the defendant from paying the amount of a bond to obtain pretrial, or pre-revocation, liberty. In other words, it does not apply where the defendant is held without bond, creating a circumstance in which *no* defendant, indigent or not, may be released. *See Sorenson*, 2000 S.D. 127, ¶¶ 21–23, 617 N.W.2d at 150–51.

[¶40.] In *Sorenson*, we rejected a defendant's argument that he was entitled to credit for time served in pretrial custody after the circuit court revoked his bond and ordered him held without bond. *Id.* ¶ 23, 617 N.W.2d at 151. Because the defendant had committed a "material breach of a condition of release without good

---

7. We have discussed and applied this rule in the presentence context, not in post-sentencing revocation proceedings. However, the parties have not suggested this distinction is consequential to the rule's substantive due process nature. We do note, as an aside, that as a purely statutory—not constitutional—matter, our Legislature has enacted a statute that requires the Board of Pardons and Parole to "credit the inmate with time spent in custody as a direct result of the parole violation." SDCL 24-15-21. However, there is no corresponding statute that requires a circuit court to grant credit for time served awaiting a probation revocation determination.

cause," we applied SDCL 23A-43-21[8] and held that "he was not eligible for release" prior to trial, "whether or not he had the financial ability to post bail." 2000 S.D. 127, ¶¶ 21, 23, 617 N.W.2d at 151.

[¶41.] Here, after Fuller's probation was interrupted by two felony arrests in less than 30 days, the circuit court ordered him held without bond pending his revocation hearing. The record is replete with Fuller's efforts to obtain bond, both through counsel and acting pro se, but the court denied each of them. And Fuller does not challenge those rulings on appeal, either by alleging the court abused its discretion or that he had a legal right to bond.

[¶42.] Nor does Fuller allege that the circuit court's decision to deny him credit for the 170 days he spent in jail awaiting his revocation constituted an abuse of discretion. Instead, he makes a purely legal argument for jail credit based on SDCL 23A-27-18.1, which authorizes a credit for confinement "toward any incarceration imposed upon any subsequent revocation of a suspended imposition or execution of sentence[.]"

[¶43.] However, Fuller's reliance upon this text is misplaced because it overlooks the operative portion of the statute. The provisions of SDCL 23A-27-18.1 contemplate custody ordered as a "condition" of probation or a suspended execution

---

8.      In its entirety, SDCL 23A-43-21 provides:

> Upon a showing that there has been a material breach of a condition of release without good cause, the court shall declare a forfeiture of the bond, if any, and shall enter an order revoking the conditions of release. If the defendant is not in custody, the court shall direct the clerk to issue a warrant for the defendant's arrest. The defendant shall remain in custody until discharged by due course of law.

of sentence. Simply put, Fuller was not held as a condition of his probation after his December 5 arrest—he was held because the circuit court determined he was a threat to the community, and that finding is not challenged here.[9]

[¶44.] Without receiving credit for the 170 days, Fuller argues his penitentiary sentence will become illegal because it will exceed the two-year statutory maximum. This argument is based on a flawed premise because the circuit court did not "sentence" Fuller to the 170 days in addition to the suspended two-year sentence it executed.

### *Allegation of judicial bias*

[¶45.] Fairness is a judicial virtue that "requires the appearance as well as the existence of impartiality." *Marko v. Marko,* 2012 S.D. 54, ¶ 20, 816 N.W.2d 820, 826. Fuller alleges the circuit court in his case was biased against him and was obligated to recuse itself under Canon 3E(1) of our Code of Judicial Conduct. *See* SDCL 16-2, App. (South Dakota Code of Judicial Conduct).

[¶46.] Canon 3E(1) states that "a judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned[.]" These include instances of "personal bias or prejudice" or "personal knowledge[.]" Canon 3E(1)(a).[10] "The standard is an objective one, requiring disqualification

---

9. At his June 2022 sentencing, the circuit court ordered Fuller to serve 18 days in jail as a condition of his suspended prison sentence, and it credited him with the 18 days he had served prior to sentencing.

10. Canon 3E(1) also requires recusal in three other specifically identified situations—"(b) prior service as a lawyer in the matter, (c) economic interest, and (d) close personal relationship of relatives or parties to a proceeding." *Marko,* 2012 S.D. 54, ¶ 19, 816 N.W.2d at 826 (citing Canon 3E(1)).

(continued . . .)

where there is 'an appearance of partiality . . . even though no actual partiality exists.'" *Marko*, 2012 S.D. 54, ¶ 20, 816 N.W.2d at 826 (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S. Ct. 2194, 2202–03, 100 L. Ed. 2d 855 (1988)).

[¶47.] The obligation of a judge to recuse when the judicial canons require it is matched by an "equally strong duty not to recuse when the circumstances do not require recusal." *Id.* ¶ 21 (citing Center for Professional Responsibility, American Bar Association, Annotated Model Code of Judicial Conduct 187 (2004)). This duty to remain assigned to a case "discourages potential abuse of the recusal process" by "a discontented litigant [seeking] to oust a judge because of adverse rulings made[.]" *Id.* ¶ 20, 816 N.W.2d at 827 (quoting *Ex parte Am. Steel Barrel Co.*, 230 U.S. 35, 44, 33 S. Ct. 1007, 1010, 57 L. Ed. 1379 (1913)).[11]

[¶48.] Here, Fuller has not established bias under Canon 3E(1). He bases his claim of judicial bias, in large part, upon the contempt finding the circuit court made during the pretrial suppression hearing when Fuller failed to comply with the court's order to turn over his phone. Fuller claims the court signed the arrest

---

(. . . continued)

Critically, however, these four examples are illustrative only, and "[t]he commentary to Canon 3E(1) explains: 'Under this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in Section 3E(1) apply.'" *Id.* ¶ 20 (quoting Canon 3E(1) commentary).

11. In *Marko*, we clarified our standard of review and held that a judge exercises discretion only when deciding "whether the facts and circumstances fit within the disqualifying criteria." 2012 S.D. 54, ¶ 18, 816 N.W.2d at 826. However, once a judge determines that a disqualifying criterion is satisfied, recusal is mandatory. *Id.*

warrant in the misdemeanor contempt file and argues that the court "should have disqualified himself and not signed any warrants pertaining to the contempt charge nor should he have presided over that file."

[¶49.] But whether the circuit court should have presided over the contempt file is not before us. In fact, the record does not contain the arrest warrant from the contempt file, though it does establish the fact that the contempt file was not finally adjudicated. The change of plea transcript indicates that the contempt file was dismissed, along with other unrelated charges, as part of a global plea agreement that culminated in a knowing and voluntary plea that had the effect of waiving all non-jurisdictional errors. *See State v. Andrews*, 2007 S.D. 29, ¶ 4, 730 N.W.2d 416, 418 (quoting *State v. Hoeft*, 1999 S.D. 24, ¶ 12, 594 N.W.2d 323, 326) ("It is 'the general rule that a voluntary and intelligent plea of guilty waives a defendant's right to appeal all nonjurisdictional defects in the prior proceedings.'").

[¶50.] Fuller also alleges the circuit court demonstrated bias in its handling of his probation revocation proceeding. The principal focus of Fuller's argument is the court's decision to go forward with the revocation proceeding after initially indicating to Fuller's then-appointed counsel that it was inclined to defer acting on the revocation case until the resolution of Fuller's two new felony criminal cases.[12] The court reconsidered this decision and decided to proceed with the probation

---

12. Fuller used a different judicial disqualification procedure to remove the circuit court from his two new cases. *See* SDCL ch. 15-12. Though it is listed among our codified laws, the procedure is, in fact, based upon court rules we have promulgated, and it allows a party to unilaterally disqualify a judge early in a case after filing an affidavit stating a belief that "such party cannot have a fair and impartial trial before the named judge or magistrate." SDCL 15-12-26.

revocation case at approximately the same point it granted deCastro's motion to withdraw.

[¶51.] Critically, however, Fuller has not challenged the circuit court's legal authority to do precisely what it did. It seems incongruent to claim that a judge's official conduct in connection with a case evidenced improper bias despite being authorized. The same holds true for Fuller's additional argument that the circuit court "denied Fuller the ability to introduce impeachment evidence[.]"

[¶52.] Fuller's final claim of judicial bias concerns the fact that the circuit court appeared to find that Fuller also violated the probation condition to remain in contact with his CSO. Fuller notes that the State had not alleged this as a basis for revocation and argues that the court "went out of his way in order to find more probation violations against Fuller than were ever alleged against him[.]" We read the record differently.

[¶53.] In context, the court's findings regarding Fuller's compliance with the condition to stay in contact with his CSO was a fair comment on the evidence adduced at the revocation hearing. Fuller's CSO testified that Fuller missed an October 21, 2022 appointment, and did not respond to the CSO's October 26 email. We discuss below whether the State's petition provided notice to Fuller of the failure to maintain contact with his CSO, but regardless, the court's comments were based upon the record and are not evidence of judicial bias.

**Due Process**

[¶54.] We have held that due process for revocation hearings requires the following:

(a) written notice of the claimed violations of probation or parole;

(b) disclosure to the probationer or parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole.

*State v. Christian*, 1999 S.D. 4, ¶ 16, 588 N.W.2d 881, 883 (cleaned up) (quoting *Morrissey*, 408 U.S. at 489, 92 S. Ct. at 2604).

[¶55.] Fuller offers a passing due process challenge to the State's revocation petition: it violated due process because it did "not describe the new charges in any way." In Fuller's view, the petition was constitutionally deficient because it did "not disclose the evidence that would be used" against him. We disagree.

[¶56.] The petition listed the four specific charges arising out of his November 23 arrest, and the five additional charges relating to the December 5 arrest. The petition also states that Fuller was required to "remain a law abiding citizen" as a condition of his probation. This was sufficient to provide Fuller with notice of the violations.

[¶57.] Fuller's specific claim that the petition did not disclose the evidence that would be used against him is somewhat confounding. Although the State must

disclose the evidence against Fuller, there is no due process requirement that the petition detail all of the State's evidence. Indeed, it would seem unusual that this would be the case in practice.

[¶58.]       Significantly, Fuller does not allege that the State did not disclose the evidence against him. And although the record does not reveal exactly what the State provided, the transcript from the revocation hearing confirms that Fuller received written police reports and video evidence from the body-mounted cameras worn by officers, all relating to the November and December 2022 arrests. In fact, a jail official stated that Fuller had been up at night watching recorded video from police officers' body cameras.

[¶59.]       Fuller also claims that the circuit court was not a neutral and detached judicial officer, but this is the same argument made as part of the disqualification argument we rejected above. The fact that Fuller makes the same argument under a due process theory, in addition to Canon 3E(1), does not change our conclusion that the claim lacks merit.

[¶60.]       Fuller makes a final argument that challenges the sufficiency of the evidence to support the circuit court's finding that he violated his probation. He claims that the petition's allegation that he violated the law-abiding-citizen condition was facially deficient because it merely alleged arrests and any claim of criminal conduct was ultimately not supported by the evidence. As indicated above, the petition apprised Fuller of the State's allegation.

[¶61.]       We also conclude that the evidence supported the court's findings that Fuller violated the probation condition prohibiting violations of the law.  Law

enforcement officers involved in both arrests testified about the circumstances leading up to both arrests, including traffic stops, the seizure of contraband in Fuller's vehicle, and other investigative efforts, which led to the charges. And as we noted above in our prejudice discussion relating to the statutory right to counsel issue, the evidence of Fuller's illegal use and possession of methamphetamine was particularly strong.

## Conclusion

[¶62.] Although the court did not comply with the statute that required it to appoint counsel for Fuller in this revocation proceeding, Fuller has not established prejudice, and his remaining arguments are not supportable.

[¶63.] Affirmed.

[¶64.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.